In the Matter of the Marriage of

TANNLER,
*Respondent,*
*and*

TANNLER,
*Appellant.*

(82-5-343; CA A27512)

683 P2d 110

Roger Hennagin, Lake Oswego, argued the cause and filed the brief for appellant.

Steven Price, Oregon City, argued the cause for respondent. With him on the brief was Kenneth B. Stewart, Oregon City.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

Wife appeals from a dissolution decree. She assigns as errors the court's property division and the amount and duration of spousal support. We modify the decree and affirm as modified.

Wife, age 48, and husband, age 49, were married for 27 years. They have four children. The youngest, age 15, lives at home. Wife was awarded custody of that child. Wife has not been employed since 1956, when she worked as a stenographer. She has completed high school, one and a half years of college and six weeks at a business college. She has recently completed three word-processing classes at a community college. Husband has been a salesman for seven years. His average annual gross income over the past four years exceeded $36,000.

The court gave wife the residence with an equity of $78,000 but gave husband a $20,000 lien against it that wife must discharge within seven years without interest. Wife also received furniture and personal property valued at $7,000 and an automobile. In addition to the lien, husband received a building lot valued at $8,000, his interest in his pension plan, valued at $14,000, life insurance policies worth $8,700 and an automobile. The court also awarded husband an interest in a land sales contract. The sellers named in the contract are husband, his father and his mother, as tenants-in-common. Each is entitled to receive one-third of the buyers' payments.

The sales price stated in the contract is $275,000, with a $50,000 down payment. Before husband and wife separated, husband had received one-third of the down payment. The buyers were to pay the principal balance of $225,000, with annual interest at 8 per cent, by paying accrued interest of $18,000 on December 30 of 1978, 1979 and 1980, and by paying $56,250 principal plus accrued interest on December 30 of 1981, 1982, 1983 and 1984. Accordingly, husband was entitled to receive the following amounts during the term of the contract:[1]

---

[1] The figures for 1982, 1983 and 1984 were taken from appellant's brief and were not challenged by respondent. The 1981 figure was determined by taking one-third of $56,250, plus one-third of the interest on $225,000 (*i.e.,* $6,000).

Dec. 30, 1978 - $ 6,000      (interest)
Dec. 30, 1979 - $ 6,000      (interest)
Dec. 30, 1980 - $ 6,000      (interest)

Dec. 30, 1981 - $24,750      (interest and principal)
Dec. 30, 1982 - $23,812.50      (interest and principal)
Dec. 30, 1983 - $22,125      (interest and principal)
Dec. 30, 1984 - $20,437.50      (interest and principal)

There is no evidence that the buyers made advance payments.

In her first assignment of error, wife argues that the property division is inequitable. She requests that we eliminate husband's lien against the residence and also award her a judgment against husband for $10,000. The fairness of the property division depends on the value of husband's remaining interest in the real estate contract and whether that interest is a marital asset. Husband argues that his contract interest was a gift from his father to him, is not a marital asset and is worth only $7,000. Wife asserts that the contract interest was a gift from the father to both of them, is a marital asset and is worth $42,560.50 or $66,375, depending on whether the payment from buyer due December 30, 1982, is considered paid.

The record does not show to whom the buyers made payments under the contract. The evidence does show that father paid $69,628 to husband or wife or both over the term of the contract until the time of trial in January, 1983.[2] The father testified that the payments were advances against husband's share of the contract payments from the buyers, including amounts which buyers were to pay in 1982, 1983 and 1984. Husband testified that the payments were gifts unrelated to the land sale contract. Testimony by wife indicated that at least some of the money received from father was the buyers' payments of interest on the contract.

The trial court considered that the interest in the real estate contract was a gift from the father to husband alone. The trial court also found:

"The interesting thing is as to what the value of the contract to which, according to the evidence, the petitioner is

[2] Husband asserts that by June 14, 1982, his father had advanced $58,628, approximately $7,000 less than the $66,562 due under the agreement for 1982, 1983 and 1984. His exhibit indicates that during the remainder of 1982 the father gave an additional $11,000, for total "cash advances" of $69,628.

entitled to. He says that he thinks he's entitled to one-third of those payments, and his father testified that there were some advances, and I don't — I will take the testimony of the petitioner on that.

"When I add them up I find that the — I will award to the petitioner the full interest that he has in the contract which runs from he [sic] and his parents * * *."

The court made no specific finding of the current value of husband's interest in the contract but must have agreed with husband that the value of his remaining contract interest was only $7,000.

■ We find that the interest in the contract was a gift from father to husband and wife, that it is a marital asset and that the remaining interest in the contract is worth $42,562.50.[3] We find that the buyers paid the contract payments to the father, whose disbursements to husband and to wife, from 1977 through 1982, were a combination of one-third of the sums the father received from the buyers and some additional gifts.[4] Through December, 1982, husband should have received $66,562.50 from the buyers. Thus, father paid over all the sums that husband and wife were to receive under the contract through December, 1982, and additional gifts of $2,055.56, totaling $69,628. Husband, therefore, should still receive a total of $42,562.50 under the contract in 1983 and 1984.

■ Both husband and wife are presumed to have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held. ORS 107.105(1)(f). The presumption is rebutted, however, if husband acquires the property by gift unrelated to wife's efforts, or if husband is the sole object of the father's donative intent. *See Jenks and Jenks,* 294 Or 236, 656 P2d 286 (1982). Husband has not rebutted the presumption. Although the

---

[3] We assume that the full 1982 payment had been paid by the buyers to the father and that the father paid husband his one-third share. In her brief, wife argues that the money received in 1982 should also be included in the marital assets. We disagree, because we believe that the money had already been spent for marital expenses during 1982, including husband's payments of $825 monthly temporary spousal support. Husband does not assert that the remaining balance of the land sales contract should be discounted to present value.

[4] Husband failed to introduce credible evidence offering other explanations for the father's payments.

contract was in his name alone and he testified that father gave him the one-third interest in the contract, husband went to his father originally for money for family obligations. Also, the father testified that he "gave [to Bob and his family] a lot more than I should have" and that "[e]verything went right to the family. Made out to both of them." As part of the "cash advances" father wrote a $500 check to "Diane Tannler" on January 27, 1977, and a $6,000 check to "Bob and Diane Tannler" on July 18, 1980. Both husband and wife were the objects of the father's donative intent with respect to the contract payments.[5]

█ To achieve an equitable distribution, the court should not have given husband a lien on the residence. We believe that the award of the "long half" of the marital assets to the wife is justified because of wife's significantly lower earning capacity. *Buttenhoff & Buttenhoff,* 35 Or App 287, 291, 581 P2d 111 (1978). We do not agree, however, that wife should receive an additional $10,000 judgment against husband.

█ In her second assignment, wife argues that the court's award of $250 monthly spousal support for four years is inadequate. She asks for $750 per month permanent spousal support. In awarding spousal support, we consider the duration of the marriage, the parties' ages, health, work experience, earning capacities, financial condition and need for career retraining. ORS 107.105(1)(c). Wife should be able to enjoy a standard of living not unduly disproportionate to that which she enjoyed during the marriage. *Steinbrenner and Steinbrenner,* 60 Or App 106, 111, 652 P2d 845 (1982); *Grove and Grove,* 280 Or 341, 571 P2d 477, *modified* 280 Or 769, 572 P2d 1320 (1977).

██ Wife is presently totally dependent on husband. With her past secretarial experience and recent training, she should be employable in a secretarial position. She testifed that gross starting salaries for positions for which she is

---

[5] Even if the presumption is overcome, however, the property division must still be "just and proper in all the circumstances." ORS 107.105(1)(f). When, as here, the donated property has been integrated into the common financial affairs of the parties and their children, the property should be part of the division of marital assets. *See Jenks and Jenks, supra,* 294 Or at 243.

qualified are $750 to $800 a month. Although husband testified that he thought she could earn $1,200 a month, we find that wife's testimony is more realistic and that she will be able to net approximately $625 a month at a secretarial job. Wife has lived on somewhat less than $1,300 a month since the separation. She receives $225 a month as child support. We find that $550 per month spousal support is sufficient. Husband's monthly living and business expenses are $1,125, and his average net monthly income is $1,900. He can afford to pay $550 spousal support in addition to the child support. Considering the duration of the marriage, the husband's greater earning capacity and the standard of living enjoyed during the marriage, we find that permanent spousal support is appropriate. After three years from the date of the dissolution decree spousal support should be $400 per month, because wife should be improving her job skills and increasing her earning potential. *See Fowler and Fowler,* 52 Or App 223, 226, 627 P2d 1304 (1981); *Gifford and Gifford,* 49 Or App 1113, 621 P2d 99 (1980). We reject wife's request that husband purchase life insurance to guarantee her spousal support, because his support obligation in any event would terminate at his death.

The decree is modified to eliminate the lien against the family residence and to increase the spousal support award to $550 monthly for three years from the date of the dissolution decree and $400 monthly thereafter. Affirmed as modified. Costs to wife.