664

Argued and submitted June 15, 1987, affirmed February 24, 1988

In the Matter of the Marriage of

GABLE,
*Appellant,*
*and*

GABLE,
*Respondent.*

(D8508-66098; CA A40908)

750 P2d 534

Richard B. Brissenden, II, Eugene, argued the cause for appellant. On the brief were Timothy A. Sylwester, and Harrang, Long, Watkinson & Arnold, P.C., Eugene.

Garr M. King, Portland, argued the cause for respondent.

On the brief were Daniel M. Ricks, and Kennedy, King & Zimmer, Portland.

Before Joseph, Chief Judge, and Newman and Deits, Judges.

DEITS, J.

Joseph, C. J., concurring in part and dissenting in part.

## DEITS, J.

Husband appeals a judgment of dissolution, including a challenge to a *pendente lite* order. The trial court, *inter alia,* awarded wife $1,000 per month spousal support for five years and $500 per month for 15 years thereafter; husband was also ordered to pay wife $6,775 as arrearages on the *pendente lite* order. The amount of spousal support is in issue.

The parties were married for almost 23 years and have two children, one of whom is a minor. Wife has custody of the minor child. She received her nursing degree shortly after the marriage and worked full-time the first five years of the marriage to finance husband's dental school education. Once husband had established his dental practice, he requested that wife not work. After 11 years, he sold his practice in Eugene and bought a specialized practice in Portland. He drew as salary only about $25,000 a year from his Eugene practice and varying, but similarly modest, amounts from his Portland practice. However, the family's disposable income was substantially and regularly augmented by large "loans" from the practice, which was incorporated. Among the reasons why husband kept his salary low was to obtain scholarship grants and other aid for his son at Stanford University. In his last year in practice, he made available to himself about $90,000, having the corporation pay many personal expenses.

In 1985, husband and wife separated. Shortly thereafter, she began working full-time. Wife's gross annual salary as a nurse is approximately $26,000. At about the same time, he decided to quit the dental profession and initiated the sale of his practice. His broker originally valued it at $180,000. Two weeks later, he took it off the market; when he again put it on the market, its value had declined and continued to decline, because he voluntarily reduced the time that he spent seeing patients. Two months before the hearing in this case, he simply quit practicing.[1] At that time, he paid off personal charge accounts with corporation money and paid himself and his employes severance pay, but he failed to pay family expenses or the *pendente lite* support for his wife and child.[2]

---

[1] A court-appointed receiver sold the practice in May, 1986, for $63,500.

[2] The court ordered, *pendente lite,* unallocated child and spousal support in the sum of $1,400 per month, plus $1,500 "suit money."

He began receiving unemployment compensation and was still receiving it at the time of trial. He claims that he no longer intends to practice dentistry and contended at trial that he voluntarily closed his practice to redirect his career into teaching or another profession. However, he conceded at trial that he had applied to teach or practice dentistry elsewhere.

Husband argues that the award of spousal support is excessive, because wife was awarded most of the marital assets, and he was ordered to pay most of the debts.[3] He asserts that his income at the time of trial was limited to unemployment compensation and that he has no ability to pay spousal support. The Supreme Court has previously reduced amounts of spousal support when a party, in good faith, out of necessity or preference, has changed an occupation and had, as a result, decreased income and no longer has the ability to pay the previously ordered amounts. In *Nelson v. Nelson,* 225 Or 257, 260, 357 P2d 536 (1960),[4] the court stated:

> "Where the defendant husband, acting in bad faith, voluntarily worsens his financial condition the authorities leave no doubt that he cannot obtain a modification of a decree under which he is required to pay alimony or support money. * * *
>
> "One may in good faith make a change in occupation, fully aware that the change will reduce his ability to meet his financial obligations to his children. To find bad faith it would be necessary to show that defendant acted with a purpose of jeopardizing the interests of his children."

This is not a case, however, where a party in good faith out of necessity or preference has changed jobs. In evaluating husband's credibility and motives, the trial judge was convinced (as, apparently, the *pendente lite* judge was, too) that husband had always enjoyed more income from the practice than he ever admitted, that his actions since the separation were motivated primarily by his resolve to avoid paying spousal support, that he has the ability to earn substantial

---

[3] Wife was not awarded substantial income-producing assets. The two rental properties awarded to wife had a negative cash flow. Wife was ordered to pay debts totaling $19,800. If she were to liquidate the property awarded to her and pay the liabilities she is required to pay under the court order, she would receive approximately $20,000. Husband was ordered to pay joint marital debts totaling $7,277 and approximately $42,700 to the creditors of his business.

[4] *Nelson* has only been applied in spousal and child support modification cases; however, there is no apparent reason why its application should be so limited.

amounts if, as and when he desires and that he will do that if he succeeds in defeating wife's claim for support. Husband told a divorce mediator that he wanted to quit dentistry, because "dentists got screwed by their ex-wives." The evidence is clear that he intentionally destroyed the value of his practice, which was the major asset of the marriage, and eliminated his income. There is no doubt that husband's actions were taken in bad faith, in order to avoid being required to provide spousal support. Oregon appellate courts have previously refused to sanction this sort of behavior. *Agrue v. Agrue,* 233 Or 456, 378 P2d 965 (1963); *State ex rel Dwyer v. Dwyer,* 69 Or App 56, 684 P2d 15 (1984), *aff'd* 299 Or 108, 698 P2d 957 (1985).

Husband argues that, in setting spousal support, we are limited to a consideration of his present income. He argues that any estimation of what he might earn were he to resume practice is speculation. However, ORS 107.105(1)(d) and (f) allow the court, in determining the amount of support, to consider a party's "earning capacity" and "job opportunities." Under appropriate circumstances, evidence of a party's past income may be considered in determining earning capacity. *Bogh and Bogh,* 64 Or App 49, 51, 666 P2d 1375 (1983); *Barnes and Barnes,* 51 Or App 689, 692, 626 P2d 936 (1981); *Armintrout and Armintrout,* 49 Or App 211, 619 P2d 658 (1980). This is not a case in which external causes, such as poor economic conditions or the fact that a party was either physically incapacitated or laid off, make it uncertain whether a party can return to former earnings. *See Klock and Klock,* 83 Or App 656, 733 P2d 65 (1987) (although union representative testified that party would be re-employed, the issue was still uncertain); *Rice and Rice,* 60 Or App 95, 652 P2d 877 (1982); *Parker and Parker,* 56 Or App 112, 641 P2d 84 (1982); *Nussmeir and Nussmeir,* 27 Or App 173, 555 P2d 813 (1976); *Phillips and Phillips,* 27 Or App 629, 557 P2d 31 (1976). In *Batiste and Batiste,* 61 Or App 112, 655 P2d 233 (1982), *rev den* 294 Or 536 (1983), the court declined to consider a party's anticipated earnings from a new and as yet untried venture. Due to the uncertainties in each case, the court declined to speculate as to the parties' future earning capacity.

In this case, it was established that husband was presently receiving $844 a month in unemployment compensation. However, it was also established that his earning capacity is

more realistically about $90,000 to $100,000 annually. It is also clear that his opportunities for future employment are good. He offered no evidence of his inability to work or of any other factors, other than his own desires, which led to the closure of his practice. In fact, he testified that he had applied for positions in dentistry abroad and states in his brief that there is no evidence of any physical or professional impediment that would prevent him from being employed in his chosen profession. In short, husband offered no evidence to suggest that the income generated before his withdrawal from practice is an inappropriate measure of his earning capacity.[5]

■ In determining the proper amount of support, the court must attempt to do justice between the parties. *Grove and Grove,* 280 Or 341, 353, 571 P2d 477, *modified* 280 Or 769, 572 P2d 1320 (1977). ORS 107.105(1)(d). Additionally, "[p]arties to a long term marriage should leave the marriage in approximately equal positions." *Pierce and Pierce,* 70 Or App 24, 688 P2d 114 (1984). In light of the length of this marriage, wife's substantial contribution to husband's education and earning capacity and husband's deliberate withdrawal from his practice, we hold that the trial court's award of spousal support was reasonable in amount and duration.

Husband failed to provide a transcript of the *pendente lite* hearing, and there is no record on which to address the assignment of error regarding it.

Affirmed.

**JOSEPH, C. J.,** concurring in part and dissenting in part.

I agree that there is no record on which we can address husband's assignment of error relating to the *pendente lite* award. I dissent from the disposition of the permanent spousal support issue.

This case is not quite the same as any cited by the majority, because husband's future income depends entirely

---

[5] Even if the evidence presented regarding husband's earning capacity could be considered speculative, it is no more speculative than the evidence considered in numerous cases regarding a wife's potential earning capacity. *See Jackson and Jackson,* 73 Or App 282, 284, 698 P2d 549 (1985); *Tannler and Tannler,* 68 Or App 432, 437, 683 P2d 110, *rev den* 297 Or 547 (1984); *Coats and Coats,* 64 Or App 594, 600, 669 P2d 370 (1983).

on his own efforts, just as his destruction of his income has been entirely by his own efforts. Our dilemma is that, to uphold the support award to wife, we have to be persuaded that we are not imposing an unjust burden, given husband's *actual ability to pay*. At the time of the judgment he was receiving unemployment compensation of about $844 a month, out of which he is obligated to provide $400 for the parties' minor child. Whatever we may believe, and however strong is the basis for the belief, that husband is a swine and that he intends to "get well" financially if, and as soon as, his scheme has worked, the inescapable fact is that he has no present means to pay the amount awarded by the trial court, plus the arrearages, plus the child support, from his present income or assets other than his professional skill.

There is nothing to be gained if we merely turn the present dispute into an unavailing chain of contempt hearings. Just as the award of spousal support is excessive in present circumstances, so is the award of child support. However, husband concedes that the *amount* of child support is appropriate *and* that he can pay it. Given that concession, I think it not just that he pay all that he can afford only as child support. I would reduce the child support award to $200 a month and reduce the spousal support award to $200 a month as a permanent award. By that means, we would achieve a correct legal result (that more not be required to be paid than can fairly be paid) and protect wife, as well as the child over the long term, against the craven maneuvering of husband.