Argued and submitted September 19, affirmed December 11, 1991, reconsideration denied April 15, petition for review denied May 26, 1992 (313 Or 299)

In the Matter of the Marriage of

Kathryn M. PIERETTI,
*Respondent,*

*and*

Gino G. PIERETTI,
*Appellant.*

(D8703-61671; CA A61758)

822 P2d 733

Ira L. Gottlieb, Portland, argued the cause for appellant. With him on the brief were Gino G. Pieretti, Jr., and Keller, Gottlieb & Gorin, Portland.

Michael P. Opton, Portland, argued the cause for respondent. With him on the brief were Stephany A. Watson and Opton, Galton & Rosenthal, Portland.

Before Richardson, Presiding Judge, and Joseph, Chief Judge, and Deits, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

Husband appeals a dissolution judgment. He assigns error to the court's spousal and child support awards and child visitation limitations. We review *de novo*, ORS 19.125(3), and affirm.

The parties were married in 1969. Wife is 45, and husband is 55. She worked at home during the marriage and is now studying interior design. Husband was a partner in a Portland law firm. He left the firm in 1985 because of a bipolar disorder. He began work as an attorney at Tri-Met in January, 1988. After wife filed for dissolution, the parties entered into a property settlement agreement in March, 1989. In June, 1989, Tri-Met fired husband; in the same month he was involuntarily committed.

In dividing $1,288,893 in assets, the court awarded wife one-half of the $13,698 law firm partnership payout that husband would receive quarterly until November, 1990. It also awarded her permanent spousal support of $150 monthly and one-half of whatever amount husband would receive in disability payments from his former law firm, not to exceed $375 monthly, and $1,400 monthly in child support for the 4 children in her custody.

■ Husband asserts that the court adopted the settlement agreement and that it should not have. However, the court did not adopt the settlement agreement. It said:

> "The question of the settlement agreement is a more significant one, at least on its face, but I really don't think it's going to make any significant difference whether I take the property settlement agreement and evaluate that as far as its fairness in light of the present conditions, or whether I allow it to be completely set aside and start from scratch.

> "And I think, because of all of the work that obviously went into that document, I'm not going to set it aside totally. I'm going to use that as a starting point and the one that we'll work from, and both parties can show why that is fair or is not fair in its particulars.

> "* * * * *

> "[W]hether the property settlement agreement was fair, which I think it was, or whether I start from scratch and try

to decide what I would do if I was writing on a clean slate in this case, I come up to the same decision."

The court could and properly did consider the settlement agreement in entering the judgment.[1] *See Wrona and Wrona*, 66 Or App 690, 694, 674 P2d 1213 (1984).

Husband also argues that there was a substantial change of circumstances between the date when the parties executed the settlement agreement and the trial and implies that the court never considered that fact. However, husband presented evidence at trial that he had lost his job, and the court took judicial notice of the commitment order. More important, those events did not persuade the court to alter significantly the property division or support amounts from those specified in the settlement agreement, because the parties had executed the agreement knowing that husband might not be able to continue working indefinitely.[2] The court did not rely on any salary as a source of income for husband. Instead, it properly anticipated that the disability benefits that he was entitled to and could receive would allow him to meet his obligations. ORS 107.105(1)(d), (f); *see Gable and Gable*, 89 Or App 664, 668, 750 P2d 534 (1988).

■ Husband also asserts that the court based the child and spousal support awards on the erroneous assumption that he would receive $3,250 monthly in disability payments. He argues that no child or spousal support should be awarded. However, he received $2,500 monthly in non-taxed disability benefits from his former law firm until he began work for Tri-Met. At that time, those payments were reduced to $751 monthly and limited to a period of 2 years. After he was fired by Tri-Met, he became eligible for reinstatement of the $2,500 a month benefit.[3] Moreover, because he was fired

---

[1] The judgment differs from the agreement in some respects, most notably in capping wife's one-half share of husband's law firm disability payments at $375.

[2] Before entering into the settlement agreement, husband had stated that he would not sign it unless it reflected the contingency that he might not be able to continue working.

[3] A representative of husband's former law firm's insurer testified that he would be eligible for the resumption of the $2,500 monthly disability benefits (to continue through age 65), when a psychiatrist had certified that he was unable to practice as a trial attorney. The representative also said that she would forward a $2,500 check to husband immediately after receiving the certification. Husband would have been ineligible for the resumption of that amount if 24 months had

because of his disability, he became eligible for $750 a month for 6 months in disability payments from Tri-Met.[4] He had been receiving $861 monthly as Social Security benefits until he began work at Tri-Met and, after he was fired, he became entitled to have that payment reinstated, too.[5] It was proper for the court to consider all of the benefits that husband was or would be eligible to receive. *See Gable and Gable, supra,* 89 Or App at 668. We conclude that the spousal and child support amounts were fair and equitable. ORS 107.105(1)(c) and (d).

■■ Husband also asserts that the court should not have limited his visitation with his children to 3 hours supervised visitation each week and should not have prohibited him from transporting them. However, he testified that he had been involved in 2 accidents in 2 months while taking antidepressants, and there was evidence that he had transported his youngest child in violation of the interim visitation order. The court did not err in prohibiting him from transporting the children. Moreover, the limitations were to remain in effect only until a Family Services Department mediator could meet with the parents and the children and they could all agree on long-term visitation arrangements. There was evidence that husband and the children had a good relationship and that he was a caring parent. ORS 107.105(1)(b). The visitation terms are restrictive, but they are also meant to be temporary. We conclude that they are appropriate presently.

Affirmed. Costs to wife.

---

passed after the date that he was hired by Tri-Met. However, he was hired by Tri-Met in January, 1988, and was fired on June 16, 1989. The court properly considered the $2,500 as income of husband.

[4] Husband had been suspended by Tri-Met before he was fired on June 16, 1989. His sick leave salary continued through August 10, at which time he could apply for long term disability payments.

[5] A representative of the Social Security Office in Portland testified that husband would have to reapply for benefits and show that he had been disabled for 5 months and that his psychological condition would last more than 1 year. He then would be eligible for the resumption of payments of at least $861 monthly, regardless of any severance pay from Tri-Met. The representative said that the amount could be greater, depending on how much he had paid into the system while at Tri-Met.