357

Argued and submitted November 7, 1996, remanded in part with instructions; otherwise affirmed April 16, 1997

In the Matter of the Marriage of

Richard Ralph PAGANO,
*Respondent,*

*and*

Carolyn Sue PAGANO,
*Appellant,*

*and*

Sarah CUNNINGHAM,
*Intervenor Below.*

(94D0-1815DS; CA A92064)

935 P2d 1246

Inge D. Wells argued the cause for appellant. With her on the brief was Hutchinson, Anderson, Cox & Coons, P.C.

Kathryn Johnston argued the cause for respondent. With her on the brief was Cegavske, Johnston & Associates, P.C.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

**DEITS, P. J.**

Wife appeals from a dissolution judgment, challenging the trial court's spousal support award, its division of marital property and its disposition regarding the child support award. We review *de novo*, ORS 107.405, ORS 19.125(3), and remand for modification of the judgment.

The parties were married in 1981. At the time of trial, wife was 50 years old and husband was 47. The parties have one child, who was 10 years old at the time of trial.[1] Husband is an anesthesiologist, although, as we will discuss, he discontinued practicing medicine about five months before trial. The parties also operated a llama business together. Since leaving his anesthesiologist practice, husband has been involved in the llama business as his sole source of income.[2] Wife had worked as a nurse prior to the marriage, but has not been licensed and has not worked in nursing since 1982. She is receiving Social Security disability benefits for a back disability and other conditions related to that disability.

The trial court awarded wife $1,500 per month in spousal support for five years, followed by $1,000 per month for five years. It also ordered wife to pay husband child support of $360 per month. The trial court then offset the child support against the spousal support, resulting in an order requiring husband to pay wife $1,140 per month for the first five years and $640 per month for the remaining five years of the spousal support award. The trial court did not articulate why it terminated spousal support after 10 years, nor did it explain the basis of the stepped-down support.

The property division devised by the trial court was intended to divide the marital property equally. The court awarded each of the parties the personal property in their possession. That amounted to an award of about $35,368 to husband and $47,477 to wife. The court also awarded husband $96,374 in bank accounts and gave wife $1,646 that was

---

[1] The trial court awarded husband custody of the child, which wife does not challenge on appeal.

[2] At the time of trial, husband was also still receiving income from some remaining accounts receivable from his medical practice. Husband will receive no more income from his practice after those accounts are paid off.

in her bank account. Husband was given most of the llamas, which the court valued at $34,200, and wife was given animals worth $6,300. The court divided $19,000 in profit from the llama business equally between the parties and divided the proceeds from the sale of the parties' home, which amounted to about $80,000, to each party after two remaining debts were paid. Finally, the court awarded wife the limited partnership holdings owned by the parties, which it valued at about $105,000.

■　　　Wife first assigns error to the award of spousal support. She contends that it should be indefinite and that the amount of the award should be increased to $3,000 per month. In establishing the proper amount of spousal support, we attempt to fashion an award that is "just and equitable" under the circumstances. The award should take into account each party's need and ability to pay while furthering the goal of ending the support-dependency relationship within a reasonable time if that is possible to do "without injustice or undue hardship." *Grove and Grove*, 280 Or 341, 353, 571 P2d 477, *mod* 280 Or 769, 572 P2d 1320 (1977); *Krutsinger and Krutsinger*, 140 Or App 215, 218, 914 P2d 1096 (1996).

Under the applicable statute, ORS 107.105(1)(d), there are a number of factors that we consider in our determination of spousal support, including the length of the marriage, the age and health of the parties, each party's contribution to the other's earning capacity, and the standard of living established during the marriage. We also consider the extent to which either party's earning capacity may have been impaired because of an extended "absence from the job market to attend to family needs." ORS 107.105(1)(d)(F); *Benson and Benson*, 146 Or App 364, 366, 932 P2d 104 (1997). When possible, it is our objective to enable each party "to achieve an economic standard of living not overly disproportionate to that enjoyed during the marriage." ORS 107.105(1)(d)(M).

■　　　After considering all of the above factors, we conclude that wife is entitled to an award of indefinite spousal support of $2,700 per month. There are a number of circumstances that support our conclusion. First, there is without

question a substantial disparity in each party's earning capacity. Wife presently receives $1,480 per month from Social Security. That includes a payment of $516 per month for her child. Husband argues that wife has some ability to earn additional monthly income. However, the evidence demonstrates that wife's additional earning capacity is quite limited. Although wife was once licensed as a nurse, she has not practiced nursing for 14 years. She apparently lost her license due to problems related to drug use. Wife apparently did apply for reinstatement of her nursing license a number of years ago. However, there is no evidence that she expects to be reinstated or that she could be reinstated. Also, there is no evidence that, in view of her present physical and emotional disabilities, she would be capable of working as a nurse. Further, wife's ability to earn additional income by ranching is also quite limited. As the trial court found, it was "not at all convinced that [wife] is physically or emotionally able to conduct any sort of ranching business."

Although husband contends that wife's health problems do not prevent her from working and that she has improved, the evidence clearly shows that she has serious health problems that significantly interfere with her earning capacity. Wife was found to be disabled for Social Security purposes. The decision letter from the Social Security Administration Office of Hearings and Appeals stated that wife has "a combination of 'severe' impairments" including

> "a congenital history of spina bifida manefesta with lipo-myeloneningocele, a lipoma tethering the spinal cord, resulting in bowel and bladder incontinence and motor and sensory deficits. In 1984, [she] contracted St. Louis encephalitis. During the course of treatment for this condition, [she] was diagnosed with mitrovalve prolapse and cardiac arrythmia. Subsequent to her episode of encephalitis, [she] experienced persistent olfactory hallucinations and an onset of current episodes of panic attacks.

> "* * * * *

> "Dr. Moulton further testified that [wife] had often experienced deficiencies of concentration, persistence and pace, with repeated episodes of deterioration and decompensation in work or work-like settings." (Notations to exhibits omitted.)

Based on the above findings, the Social Security office concluded that wife had been disabled since 1986 and awarded her a lump sum payment and ongoing disability benefits.

Wife testified at trial that she still suffers back pain from the four laminectomies related to the tumor that was removed from her spinal cord, that she has little to no feeling in her left leg, that her leg is unstable, which causes her to fall, and that she continues to have problems with incontinence and urine retention. She said that she has difficulty sitting in one position for any length of time or standing for any length of time. She also testified that the pain and numbness in her legs made it difficult for her to perform some of the chores at the ranch, but that she was still able to perform other chores. Dr. Henderson, wife's physician, testified that she will probably experience the pain in her back for the rest of her life. Wife also suffers panic attacks and experiences mood swings that range between extreme depression to a "manic phase." Wife testified that her panic attacks had led her to do such things as stabbing herself with a needle. She stated that, with medication, the attacks decrease, but that she does not wish to continue on the medication due to problems that she has had with drug addictions related to her attempts to alleviate the pain in her back.

As Oregon courts have previously held, the limitations on a party's earning capacity from physical and emotional disabilities are an appropriate consideration in establishing spousal support that is just and equitable. *Richardson and Richardson,* 307 Or 370, 384, 769 P2d 179 (1989); *see also Arnot and Arnot,* 136 Or App 347, 350, 901 P2d 971 (1995) (indefinite spousal support awarded where spouse is "disabled by her bipolar illness and is unable to work"); *Curtis and Curtis,* 102 Or App 252, 255, 793 P2d 352, *rev den* 310 Or 393 (1990) (indefinite support awarded where spouse's only income is from social security and she has little prospect of earning additional income). Accordingly, we believe that wife's limited earning capacity due to her health problems is a significant consideration in determining wife's earning capacity.

With respect to husband's earning capacity, the evidence shows that he had worked as an anesthesiologist for 22

years. According to husband's tax returns, he earned a gross income of $161,589 in 1990; $258,730 in 1991; $116,953 in 1992; and $269,024 in 1993. His monthly accounts receivable were $169,052 for the first nine months of 1994 for an average of $18,783 per month. Based on those figures, husband's average monthly income from 1990 through 1994 was $17,195. Wife contends that husband's net average after accounting for ranching losses was $13,381 per month. In December 1994, husband reported his gross income in his Uniform Support Affidavit as $15,614 per month. In April 1995, five months after the parties separated, husband decided to stop practicing medicine because he was suffering from stress and chest pains and was concerned about his capabilities as a physician. He testified that he intended to work full-time in his llama ranching business.

■ The trial court found that husband's change of occupation from anesthesiologist to llama rancher was reasonable and that he did not make the change to decrease his financial responsibility to wife.[3] The trial court also found, however, that husband is "healthy and appears both physically and emotionally capable of earning a good living in llama ranching or anesthesiology." The court concluded that it was "most realistic" to assume that husband would operate in a "fairly average market or turn back to [the practice of] medicine once the stress of this trial ends." Nonetheless, the court determined that husband's earning capacity was only $7,000 per month, apparently basing this figure on husband's testimony that in an "average" llama market he could expect to gross about $6,250 per month and that in an "above-average" market he could expect to gross close to $14,000 per month.

Wife argues that the trial court erred in its determination of husband's monthly earning capacity. We agree. In determining what is an appropriate amount of spousal support we may consider a party's "earning capacity" and "job opportunities." ORS 107.105 (d) and (f); *Alls and Alls*, 137 Or App 32, 35, 902 P2d 1204 (1995); *Gable and Gable*, 89 Or App

---

[3] Wife, in fact, does not argue on appeal that husband's change of career was made in bad faith.

664, 668, 750 P2d 534 (1988). This is so even though the supporting party did not decrease his or her income in bad faith. *Harper and Harper*, 122 Or App 9, 13, 856 P2d 334, *rev den* 318 Or 246 (1993), *cert den* 511 US 1108 (1994). We agree with the trial court's conclusion that the stress that drove husband from the practice of anesthesiology likely is primarily related to the stress of the dissolution of the marriage and that nothing would prevent husband from obtaining additional income from the full- or part-time practice of medicine in the future. Accordingly, we conclude that husband has an earning capacity of $13,381 per month.

■ One final issue that we need to discuss in our determination of spousal support is the fact that, apparently, during the past few years, in particular during the parties' separation, wife has had a serious gambling problem. The undisputed testimony is that wife gambled large amounts of money during the parties' separation. However, although wife admits that she spent substantial amounts of money during this time period, she testified that the expenditures were related to her depression over the termination of her marriage and that she no longer gambles. Wife's mother testified that she believed that wife had stopped gambling after wife had moved out of the family home. Although there may be circumstances where a party's use of money received from support payments may affect our determination of what is an appropriate award, we are hesitant to use an award to punish a person for behavior that we might find less than admirable or to constrain supported spouses from spending money in ways that we prefer that they would not. *See Carter and Carter*, 54 Or App 86, 89, 634 P2d 265, *rev den* 292 Or 109 (1981) (spending habits of family are less important than the amount of funds available); *see also* ORS 107.105(1)(d) (listing the factors the court may consider), *but see* ORS 107.105(1)(d)(M) (stating that the court may consider "other matters as the court shall deem relevant").

In any event, we do not believe that the circumstances in this case justify reducing wife's spousal support award based on her past problems with gambling. Based on all of the circumstances here, including, in particular, the substantial difference in the parties' earning capacities, the length of the marriage and the parties' fairly high standard of

living throughout the marriage, we conclude that it is just and equitable to award wife indefinite spousal support of $2,700 per month.

■ Wife next argues that the trial court erred when it calculated her child support obligation by including the Social Security benefits that she receives for her son due to her disability. She contends that it is inappropriate to attribute this income to her because the benefits may eventually be paid directly to husband as the parent with custody of the child. However, wife apparently was receiving the benefits throughout the parties' separation and during trial, even though she did not have custody of the child. There is no evidence that any change of payees has been contemplated by the Social Security Administration. If husband is eventually named payee of the benefits to child, wife could seek to modify the award at that time. The trial court did not err in attributing this income to wife. *See Lawhorn and Lawhorn*, 119 Or App 225, 229, 850 P2d 1126 (1993) (court must consider how receipt of Social Security benefits affect parents' child support obligation); *see also El Bitar and El Bitar*, 146 Or App 608, 934 P2d 608 (1997) (where husband retained access to bank account held for benefit of child, court did not err in awarding the account to husband in property division).

■ Wife next argues that the trial court erred in offsetting the spousal support award with the child support award. Husband argues that the parties stipulated to the offset and that, because of that stipulation, the court did not err in ordering the offset. We can find no such stipulation in the record.[4] In any case, we have held that it is inappropriate to offset a spousal support award with child support. *LaFrance and LaFrance*, 134 Or App 76, 79, 894 P2d 1210 (1995). Accordingly, we remand to the trial court to modify the order eliminating the offset.

---

[4] Husband seems to rely on the *pendente lite* order for his assertion that the parties stipulated to such an agreement. The trial court apparently believed that a stipulation had been made at trial as well. However, in opening argument and closing statements, husband's attorney specifically requested an offset; he did not refer to a stipulation for an offset at any time during the trial. Likewise, wife made no mention of a stipulation at any point during the trial.

■ With respect to the property division, wife argues that the trial court erred in awarding her the parties' limited partnership holdings because the value of the holdings was uncertain and because she cannot properly manage them due to her disabilities. At trial, wife stated that she did not know the value of the limited partnerships. She said that husband had told her they were worthless, but that she thought they had some value. In fact, she submitted in her UCTR 8.010 statement that the value of the limited partnerships was $208,509 and reiterated that value in her closing argument. Wife requested that the limited partnership holdings be awarded to husband. Husband testified at trial that he did not know the value of the holdings and that they were "basically worthless," but that if wife thought they were worth $200,000 she could have them or they could split them. He also offered into evidence letters that he had received that indicated that there were financial problems with a number of the holdings.

The trial court stated in its memorandum opinion: "The Court is left without much information as to why [wife] makes so much of [the exhibit regarding the limited partnership holdings], but since she does, [it] will award those items to her." It divided all of the parties' property with the exception of the limited partnership holdings, which resulted in a property distribution valued to husband at $175,702 and to wife at $65,183, not including the proceeds from the sale of the family residence. The court then stated that if the limited partnership holdings are "worth just 50% of what [wife] claims, then the property distribution is fairly even[.]" Consequently, it awarded wife the limited partnerships.

Based on the limited information available and the respective positions of the parties, the trial court's findings in ascribing the holdings to about one half the value wife had given them and awarding that property to her seems a reasonable resolution of the matter. Further, wife did not present evidence or argue at trial that she could not manage the holdings. The trial court did not err in its disposition of the parties' limited partnerships. Wife's remaining assignment of error does not require discussion.

Remanded to the trial court with instructions to modify the dissolution judgment to award wife indefinite spousal support of $2,700 per month, to recalculate child support accordingly and to modify that portion of the order offsetting child support against spousal support; otherwise affirmed. Costs to wife.