Argued and submitted November 14, 2002, at University of Oregon School of Law, Eugene, reversed and remanded in part; vacated and remanded in part; otherwise affirmed February 19, 2003

In the Matter of the Marriage of

Loretta Margaret WILSON,
*Respondent,*

· *and*

Jeffrey David WILSON,
*Appellant.*

15-99-22947; A116236

63 P3d 1244

George W. Kelly argued the cause and filed the briefs for appellant.

Inge D. Wells argued the cause for respondent. With her on the brief was Wells & Wells.

Before Edmonds, Presiding Judge, and Brewer and Schuman, Judges.

BREWER, J.

**BREWER, J.**

Husband appeals from judgments dismissing his motion to modify his child and spousal support obligations under a dissolution judgment, holding him in contempt for wilfully failing to pay those obligations, and imposing attorney fees for contempt. We reverse and remand the judgments denying modification of spousal support, vacate the judgment denying modification of child support, and otherwise affirm.

The parties' 16-year marriage was dissolved in June 2000 when husband was 51 years old and wife was 46. Their two children were 15 and 13, respectively. At the time of dissolution, husband was an FBI agent and earned $8,015 per month. Wife worked as a community service officer and earned $2,720 per month. The trial court ordered husband to pay "maintenance spousal support" of $1,500 per month for eight years and child support in the amount of $1,000 per month. The court evenly divided husband's federal retirement benefits (FERS) in the division of marital property.

At trial, there was no evidence concerning the possibility of husband's future retirement and, in setting the amount and duration of husband's spousal support obligation, the court did not discuss that issue. However, shortly before trial, husband sent an e-mail message to a friend in which he mentioned the impending dissolution of his marriage and stated, "I was hoping to retire by the end of last year, but with all this taking place it may be a few months from now." Wife apparently found out about the e-mail message before trial, but husband did not tell her that he intended to retire in the near future. Wife testified that, because husband never informed her to the contrary, she expected that husband would continue to work until age 57, the FBI's mandatory retirement age. She believed that, in light of the support obligations to be imposed on him, husband would "defer any decision to retire." Wife also testified that she knew that she was entitled to a share of husband's retirement benefits but she anticipated that she would begin receiving benefits closer to her own retirement age.

Shortly after the dissolution judgment was entered, wife's parents gave her $30,000, which she used as the down payment for a new home.

In September 2000, husband married Kay Wilson, who is self-employed as a financial planner. At the time of the modification trial in September 2001, husband and Wilson shared a joint bank account, including a checking account, money market account, and a line of credit. Wilson owned their marital residence, a four-bedroom, 3,900 square foot home with an in-ground swimming pool. She also owned a condominium in Palm Springs. Husband did not have any interest in either property. However, husband and Wilson owned their vehicles jointly.

Wilson contributed "six or seven thousand dollars" per month to the joint bank account for expenses, and husband contributed "what he [could]." The bank records show deposits averaging more than $15,000 per month, including draws from Wilson's line of credit. From those funds, Wilson helped husband pay his expenses. Wilson testified that, from October 2000 until September 2001, husband contributed $11,000 to the joint account and paid $22,000 in personal expenses from that account. Husband and Wilson traveled frequently, including trips to Palm Springs and New York.

In late 2000, husband decided to retire, effective January 31, 2001. Husband's decision was voluntary, and he made it because it was "time to move on." Husband testified that he did not decide to retire in order to avoid having to pay child support and spousal support. In March 2001, husband began receiving "interim" FERS retirement checks in various monthly amounts and, after deducting anticipated income taxes, he gave one-half of those payments to wife. In July, wife obtained a garnishment order against husband's retirement benefits in order to collect back support. By that time, husband had begun receiving permanent retirement benefits in the amount of $5,220 per month, and the garnishment resulted in the direct payment to wife of $2,225 per month, one-half of husband's benefit less tax withholdings. Because husband made no other payment to wife after his retirement, a support arrearage began to accrue in February 2001.[1]

---

[1] That arrearage consisted of two components: (1) for the period between February and July, the total difference between the "interim" payments that

In February 2001, husband became self-employed as a private investigator and security consultant. In a deposition, husband testified that he hoped to earn $60,000 to $90,000 per year in that business. However, at the time of the modification trial, he testified that his business income had averaged only about $2,500 per month before expenses. After expenses, husband's net monthly loss from the business had averaged $383, although, in the three months before trial, husband's net income averaged $907. Husband testified that the process of starting the business had been "a lot slower" than he had expected.

At the time of the modification trial, wife's employment income was $2,982 per month. The order dividing husband's retirement benefits had not yet been entered and, as noted, his support obligations were being paid through a garnishment of his benefits. Because she was unable to roll over her interest in husband's retirement benefits to another retirement plan, wife testified that she intended to increase her deferred compensation withdrawals in order to mitigate the impact of her receipt of husband's benefits on an earlier than expected schedule. However, there was no evidence that that decision involved an ascertainable economic loss to wife.

In a letter opinion, the trial court denied husband's motion to modify his spousal support obligation. The court reasoned:

> "The decrease in [h]usband's income is the result of an entirely voluntary retirement. Although he complained of an ongoing less-than-satisfactory relationship with his last two supervisors, there is no evidence that he was forced into retirement by his employer or by declining health or by any similar concern. In making his decision to retire at age 51, [h]usband was necessarily aware of two significant factors: The economic benefit of his marriage to Kay Wilson, and the income opportunity available to him as security consultant/private investigator.

> "Although [Wilson] has no obligation to assist in the payment of spousal support to [w]ife, there is ample evidence of

husband paid to wife and the ongoing monthly support accrual of $2,500 per month, and (2) after July 2001, the sum of $225 per month, reflecting the difference between the total support obligation ($2,500) and the monthly garnishment amount ($2,225). By January 2002, the total support arrearage was $5,100.

the benefit to [h]usband from his marriage to her. She owns a house in which he resides. She has income from self-employment and ready access to credit which she shares with him and from which their joint household expenses are paid. She owns a vacation condominium in Palm Springs which he has used. She owns a Lexus automobile which he sometimes uses. He has traveled to New York City and Palm Desert while she attended conferences. In sum, any reduction in his standard of living from his reduced income has been significantly counterbalanced by the benefit of his marriage to [Wilson]."

The court also found that husband's income opportunities were "significant," that—even though he "may not be marketing his business in any significant way at this time"— his business's receipts had been increasing steadily since its inception and that husband's estimate that wife could earn $60,000 to $90,000 per year as a security consultant and private investigator was a "more realistic" estimate of husband's own earning capacity.

The court found that, except for her "unwelcomed" present entitlement to receive retirement benefits, wife's "income opportunities and benefits are relatively unchanged" since the dissolution "as are her reasonable and necessary expenses." The court also found that, at the time of dissolution, "both parties and the trial judge knew or could reasonably have known that upon [h]usband's retirement, [w]ife would begin receiving her portion of the property awarded to her." As a result, the court reasoned, husband had failed to show that wife's receipt of the pension benefits would constitute an unanticipated change in her economic circumstances. The court concluded:

"Taken individually or together, the changes identified by [h]usband do not justify the court's reevaluation of the trial judge's decision entered some eight months before [h]usband's motion. Therefore, [h]usband's motion to terminate or substantially reduce spousal support is denied. Even without the requirement that [w]ife's receipt of the pension benefits be unanticipated, it would not be just and equitable under the totality of the circumstances to substitute for [h]usband's spousal support obligation [w]ife's early and unwelcomed receipt of distributions from her property. The early retirement has already diminished the

value of that property and she testified that her intention was to invest those distributions in such a way as to make them available to fund her eventual retirement."

(Internal quotation marks omitted.) For the same reasons, the court rejected husband's request for a recalculation of his child support obligation.

In November 2001, wife filed a motion and order to show cause seeking to hold husband in contempt for failing to pay his child and spousal support obligations in full. As noted, from February 2001 through January 2002, husband's combined support obligations had—despite the garnishment—fallen into arrears that totaled $5,100. The contempt proceeding was tried in January 2002. Husband testified that he had transferred the title of his vehicle to Wilson, that he owned no real property, and that he had no investment accounts, other than a thrift savings plan that he had transferred to another retirement account.[2] The trial court found that husband had "taken some voluntary actions to avoid" his support obligations. The court found that husband's failure to pay support was willful, held him in contempt, and ordered him to pay wife's attorney fees. Husband appeals from the judgment denying his support modification motions and from the contempt judgment.

■       Because the proper resolution of both support issues depends on the motion to modify spousal support, we begin with that issue. ORS 107.135 authorizes a court to modify an award of spousal support if there has been a substantial unanticipated change in a party's economic circumstances. *Weber and Weber*, 184 Or App 190, 196, 56 P3d 406 (2002). "The overriding consideration in determining the appropriate amount of spousal support is what is 'just and equitable,' ORS 107.105(1)(d), under the totality of the circumstances." *Albrich and Albrich*, 162 Or App 30, 37, 987 P2d 542 (1999).

Husband makes the following arguments in support of his assertion that the trial court erred in failing to terminate his spousal support obligation: (1) Although the parties and the dissolution trial judge knew that husband "might

---

[2] Wife had received a half interest in the thrift savings plan account as part of the property division in the dissolution judgment.

retire," he had not retired at the time of dissolution; therefore, his retirement eight months later "does not count as a change that is anticipated." (2) His retirement, although voluntary, was not taken for the primary purpose of avoiding his support obligations; therefore, it should properly be considered as a change in circumstances affecting his support obligation. (3) Support must be calculated based on an obligor's present income, not anticipated changes; therefore, the trial court erred in utilizing, for support calculation purposes, husband's earning capacity to the extent that it exceeded his income at the time of the modification hearing. (4) The trial court was required to consider, in determining a just and equitable support award, wife's share of husband's retirement benefits. Once that source of income is considered, husband asserts, the purposes of the original award are satisfied, and support should be terminated. We consider those arguments in order.

Husband's first argument is well taken. Generally, in order to justify the modification of a support obligation, a change in circumstances must be unanticipated. Even if a change in a party's economic circumstances due, for example, to prospective unemployment or retirement is foreseeable at the time a support order is entered, it cannot furnish the basis for a present order if it is speculative. *See Weber*, 184 Or App at 201 (although spousal support may be fixed based on forecast income, the forecast must be predicated on facts existing at the time the award is made); *see also Sills and Sills*, 63 Or App 157, 160, 662 P2d 795, *rev den*, 295 Or 446 (1983) (holding that, although obligor's unemployment may have been anticipated at the time of dissolution, it should not have been considered in fixing the amount of spousal support because it was speculative). Accordingly, even if husband's retirement was foreseeable when the parties' marriage was dissolved, the timing of its occurrence was speculative and, thus, it could not have affected his support obligations at that time. It follows that husband's post-dissolution early retirement constituted an unanticipated change of circumstances entitling him to consideration of his motion. *Id.* However, that point only gets husband to his additional arguments; it does not, by itself, win the day.

Husband's second and third arguments coalesce analytically, and we consider them jointly. ORS 107.135(3)(b) provides, in part:

> "[T]he court shall not find a change in circumstances sufficient for reconsideration of support provisions, if the motion is based upon a reduction of the obligor's financial status resulting from the obligor's taking voluntary retirement * * * if it is shown that such action of the obligor was not taken in good faith but was for the primary purpose of avoiding the support obligation."

Husband argues that, because the trial court did not find that he had retired for the primary purpose of avoiding his support obligations and because the record does not support such a finding, his voluntary retirement presents an occasion for modification of his obligations. That conclusion meshes with husband's argument that the court was required to consider what he actually earned, not what he might earn in the future as a security consultant and private investigator. *See. Rice and Rice*, 60 Or App 95, 99-100, 652 P2d 877 (1982) (holding that a modification order must be based on economic circumstances that exist on the date it is entered).

The trial court did not make any findings concerning whether husband's voluntary retirement was in good faith. *See* ORS 107.135(3)(c) (enumerating relevant factors for determination of "good faith"). Nor do we need to make that determination on *de novo* review because, even if husband's primary purpose in taking early retirement was not to avoid his support obligations, the fact that his voluntary retirement may not have automatically disqualified him from support modification under ORS 107.135(2) does not mean that he was therefore entitled to such relief.

We rejected an analogous argument in *Harper and Harper*, 122 Or App 9, 15, 856 P2d 334, *rev den*, 318 Or 246 (1993), *cert den*, 511 US 1108 (1994). In that case, the husband, an attorney, appealed from spousal and child support awards that he asserted were excessive in light of his existing income. It was undisputed that the husband's practice had become "economically nonviable" in recent months. *Id.* at 11. However, an expert witness testified that he was qualified to

work as an associate with a law firm or in a state agency, where he could earn a higher income. *Id.* The trial court found that the husband was capable of earning income at that higher level, and the court fixed his support obligations accordingly. *Id.* at 12. On appeal, the husband argued that "the trial court erred by relying on [a finding of his earning capacity], because there was no evidence that he was working less than full time or that he had decreased his income in bad faith." *Id.*

We disagreed, observing that

"ORS 107.105(1)(d)(D) provides that, in awarding spousal support, the court shall consider: ·

" 'The earning capacity of each party, including educational background, training, employment skills and work experience.'

"Thus, the trial court was not required to find that husband was unemployed or underemployed in order to base its award of spousal support on earning capacity rather than actual income."

*Id.* at 12-13.[3] The husband also argued, as does husband here, that speculation about his potential income was impermissible, "because ORS 107.135 permits modification of spousal and child support if his financial circumstances improve." *Harper,* 122 Or App at 13. Again, we disagreed, noting that " '[w]e have never held that a court is precluded from forecasting a person's earning capacity' in order to determine an appropriate award of spousal support." *Id.* (quoting *Furlong and Furlong,* 120 Or App 105, 108, 852 P2d 233 (1993)).

In *Pagano and Pagano,* 147 Or App 357, 935 P2d 1246 (1997), we considered similar issues in connection with an obligor's early retirement. In that case, the husband, a doctor, changed his occupation from anesthesiologist to llama rancher shortly before the dissolution proceeding. The trial court found that the husband was driven to change professions primarily because of "the stress of the dissolution of the

---

[3] The current version of ORS 107.105 applied to this case. Although the cases that we cite concern different versions of ORS 107.105, the discussions in those cases of the concept of earning capacity remain instructive.

marriage and that nothing would prevent [him] from obtaining additional income from the full- or part-time practice of medicine in the future." *Id.* at 364. The court nonetheless set the husband's support obligation based on his earning capacity as a llama rancher. On appeal, the wife argued that the trial court had erred in its determination of the husband's earning capacity. We agreed, stating, "In determining what is an appropriate amount of spousal support we may consider a party's 'earning capacity' and 'job opportunities.' ORS 107.105(1)(d) and (f) [(1995)]. This is so even though the supporting party did not decrease his or her income in bad faith." *Id.* at 363-64 (some citations omitted). Accordingly, we reset the husband's support obligation based on his earning capacity as a physician. *Id.*

As noted, husband relies on another line of cases, including *Rice*, for the proposition that support is supposed to be calculated based on present income, not anticipated changes in income. In *Rice*, we held that an obligor's support obligation should be modified where his income had decreased due to a temporary economic downturn that was beyond his control. 60 Or App at 99. However, that case and others involving income changes based on external causes are inapposite here.

As we noted in *Gable and Gable*, 89 Or App 664, 668, 750 P2d 534 (1988):

> "ORS 107.105(1)(d) and (f) [(1985)] allow the court, in determining the amount of support, to consider a party's 'earning capacity' and 'job opportunities.' Under appropriate circumstances, evidence of a party's past income may be considered in determining earning capacity. *This is not a case in which external causes, such as poor economic conditions or the fact that a party was either physically incapacitated or laid off, make it uncertain whether a party can return to former earnings.*"

(Emphasis added; citations omitted.) Here, by contrast, husband's decision to retire was not based on external circumstances over which he had no control. Instead, as the trial court found, he was able to retire at an early age largely due to the good will and support of his new wife, so that he could

pursue—with no evident reduction in his lifestyle or economic circumstances—a new vocation that he preferred to his former career. Husband's circumstances, even if not assumed to have been undertaken primarily to avoid paying support, are a far cry from those in which an obligor's normal-age or health-constrained retirement justifiably triggers a support modification. Accordingly, husband's second and third arguments are unavailing.

■ We turn to husband's final arguments, which focus on wife's circumstances rather than his own. Husband urges that wife's share of his retirement benefits must be considered in setting his support obligation and that wife's receipt of those benefits fully satisfies the purpose of the spousal support award. He relies on *Albrich*, where we held that "[ORS 107.135] requires the court to consider each party's income opportunities from all sources, irrespective of whether the opportunity derives from property awarded in the marital property division." *Albrich*, 162 Or App at 36. In *Albrich*, the husband had been forced by health considerations to take early retirement from his medical practice. We found that "it was not anticipated at the time of the dissolution that husband would have no income from employment or that his retirement and investment accounts would be a necessary source of income to fund his spousal support obligation." *Id.* at 37. Under the circumstances, we held that it was just and equitable to reduce the husband's support obligation based on the loss of his employment income. *Id.*

Here, at the time of dissolution, wife expected to defer the receipt of her share of husband's retirement benefits until approximately six years later than the age at which husband, in fact, retired. In her brief on appeal, she asserts that her interest in those benefits is now less valuable than it would have been if the receipt of monthly payments had been deferred until that later time. She notes, moreover, that she is being asked to treat an asset awarded to her in the property division as an income source in lieu of spousal support payments.

For two reasons, wife's counterargument is unpersuasive. First, ORS 107.135(3)(a)(B) requires the court to consider retirement benefits, even though they originally

were awarded to a party as a form of marital property. Second, and more significantly, there is no evidence in the record as to the amount, if any, by which the value of wife's benefits has been reduced by reason of husband's early retirement. In the absence of such evidence, we can only speculate about the extent to which wife may have been economically prejudiced by reason of husband's early retirement.[4]

Those observations bring us to the purpose of the spousal support award. In its letter opinion, the dissolution trial court characterized the award as "maintenance spousal support." An award of "spousal maintenance" potentially involves the consideration of numerous factors. *See* ORS 107.105(1)(d)(C). Here, however, the court's focus appears to have been quite specific. As husband points out, the eight-year duration of the award coincided with the parties' younger child attaining the age of 21. Husband asked the court to order spousal support for eight years as a means to supplement wife's income during the years when she would have responsibility for the financial needs of the parties' children. In fact, as wife suggests, the dissolution trial court appears to have adopted husband's proposal in that regard.

The fact that husband has voluntarily reduced his income with little apparent sacrifice to his lifestyle is of concern, but it is not controlling where, as here, the apparent purpose of the spousal support award was not to equalize the parties' incomes but, rather, to permit wife to meet the financial needs of her family. Given her present entitlement to $2,610 per month in additional income, wife appears to be better able to meet her family expenses than she was at the time of dissolution. In the absence of evidence that wife's accelerated receipt of retirement benefits will subject her to an ascertainable and unjust economic loss, we discern no other circumstances that would cause us to conclude that husband's spousal support obligation should persist. We conclude that the trial court erred in failing to terminate husband's spousal support obligation.

---

[4] There was evidence that, because wife was not willing to pay the monthly cost, she was not entitled to a FERS survivor benefit in the event that husband predeceased her. Accordingly, her FERS benefit would terminate in that event. However, there is no evidence that wife's options would have differed had husband retired at a later date.

■ The question remains whether the termination should be made effective as of the April 2001 support installment due date or some other date.[5] ORS 107.135(5). We decline to terminate husband's spousal support obligation retroactively as of the date he filed the modification motion. After his voluntary retirement, husband attempted not only to terminate his spousal support obligation but also failed to facilitate the expeditious entry of an order that would formally divide his FERS account, thereby permitting direct benefit payments to wife. Irrespective of whether husband's ongoing support obligations were subject to modification, wife was entitled to the transfer of her interest in the retirement account. At the time of the contempt hearing that transfer still had not occurred, and wife was not expecting to receive a direct FERS payment until April 2002, a full 14 months after husband's retirement. That factor leads us to exercise our discretion to terminate husband's spousal support obligation effective the first day of the month after husband either took or hereafter takes all steps reasonably required of him to permit the entry of an order transferring wife's interest in his FERS account to her. The trial court shall address that issue on remand.

■ We turn briefly to husband's challenge to the contempt judgment. It is tempting at first blush to conclude that, because that judgment is based on spousal support arrearages associated with an obligation that we have terminated, it should be reversed. However, we decline to yield to that temptation. The trial court found that husband had actively avoided paying his support obligations and that his conduct was willful. Substantial evidence supports those findings and they support the court's conclusion that husband is in contempt. *See Patchett and Patchett*, 156 Or App 69, 72, 964 P2d 1114 (1998). The Supreme Court has held:

> "The integrity of the judicial process demands compliance with court orders until such time as they are altered by orderly appellate review. Litigants are not entitled to sit in judgment on their own cases, and they must follow the appropriate channels for review of decisions they believe to

---

[5] Husband's motion and order to show cause was filed on March 23, 2001.

be invalid. Unless and until an invalid order is set aside, it must be obeyed."

*State ex rel Mix v. Newland*, 277 Or 191, 200, 560 P2d 255 (1977). The trial court did not err in holding husband in contempt.

Finally, the trial court must recalculate husband's child support obligation on remand. *See Krutsinger and Krutsinger*, 140 Or App 215, 219, 914 P2d 1096 (1996).

Judgment denying modification of spousal support reversed and remanded; judgment denying modification of child support vacated and remanded for recalculation of husband's child support obligation; otherwise affirmed.