Argued and submitted October 30, 1991, judgment modified in part; otherwise affirmed July 22, 1992

In the Matter of the Marriage of

Sandra Rae MADDEN,
*Respondent,*
*and*

Dale Ace MADDEN,
*Appellant.*

(C891567 DR; CA A67850)

836 P2d 1349

Gregory B. Soriano, Portland, argued the cause for appellant. With him on the brief were William R. Valent and Soriano & Valent, Portland.

Ann Morgenstern, Portland, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Joseph, Chief Judge, and Deits, Judge.

DEITS, J.

**DEITS, J.**

In this appeal from a judgment dissolving a 26-year marriage, husband assigns error to the trial court's division of his interest in a closely held corporation, the requirement that he provide wife with an annual accounting, the amount and length of spousal support, the failure to award him the tax exemption for their minor child and the trial court's award of attorney fees.

Before the marriage, wife, age 50, had graduated from junior college and worked as a flight attendant. She did not work outside the home during the marriage, until recently. She now works approximately 20 hours a week for $5.75 an hour taping hearings for a court reporting firm. She has made a few unsuccessful attempts to get a job as a receptionist.

Husband, age 53, worked in sales when the parties married. In the early 1970's, he formed two corporations, Madden Sales, Inc., and Dee-Two Marketing, which sell food ingredients to the dairy industry. Husband received an income of varying amounts from Madden Sales each year, plus substantial benefits, including medical, travel and automobile expenses, as well as a pension plan. Madden sales put approximately $5,000 into his pension plan in 1989. Dee-Two Marketing owns the pick-up that husband drives, and Madden Sales purchased the Porsche that he uses.

Wesman Foods, Inc., was formed by five shareholders in 1981. Husband owns a 2/9 interest and is also employed by it as a salesperson, earning approximately $48,000 a year. The company manufactures a natural preservative used in dairy products. Its gross sales were $226,889 in 1985 and $754,582 in 1989. At the time of trial, Wesman Foods owed husband $160,489 in back wages and loans, plus interest. In May, 1990, Oregon Freeze Dry made an offer to buy Wesman Foods for $500,000, plus royalties for gross earnings over $750,000. The offer indicated that approximately $133,000 of the $500,000 was for the corporation's assets and the rest for non-competition clauses that would not affect husband's work for Madden Sales. It included a six-month employment contract for husband. One of the other shareholders and the corporation's accountant testified that,

if the offer were accepted, the $500,000 would provide for little more than liquidation of debt. Husband testified that he did not want to accept the offer. Because the other shareholders were divided on the issue, his decision would be dispositive.

The trial court awarded wife custody of the parties' youngest child, age 15. It ordered husband to pay $600 per month child support and $1,750 per month permanent spousal support. The court created a college fund trust account for the children's education and ordered each party to add $5,000 to it as soon as rental properties that they owned were sold. The parties' older two children, ages 20 and 22, now attend college. The judgment divided the assets, which include a residence, several other pieces of real estate, diamonds, bonds, the three businesses, household furnishings and personal property. All of the assets, except Wesman Foods, were divided equally. Regarding Wesman Foods, the court awarded husband all of the stock but ordered that he make an annual accounting and give wife half of all money that he receives as back wages, loan payments and interest, if the business is sold.[1] The trial court explained that the annual accounting was "to protect her from any kind of bleed off of this corporation." The court also awarded wife attorney fees of $5,380.

■ Husband first assigns error to the trial court's award to wife of specific funds that he may receive from Wesman

---

[1] The court ordered

"that [husband] has a stock ownership interest in Wesman Foods, Inc., and that the company owes him money for the [bank] loan, back wages, loans, and accrued interest. [Husband] is awarded his stock ownership in the company; however, each party is awarded one-half of all amounts paid by Wesman Foods, Inc., to Respondent toward the outstanding obligations it owes him and one-half of all sums that [husband] receives in the future as a result of any sale, partial sale, or merger of the corporation. [Husband] is ordered to give [wife] a full accounting of the status of Wesman Foods, Inc., at least once each year on or before April 15 of each calendar year. This accounting shall include, but is not limited to, the corporate tax returns and all financial statements. [Husband] is ordered to notify [wife] immediately of any disbursements to him or the sale, partial sale, or merger of the company. [Husband's] current salary in the amount of $48,000 per year plus reimbursement for some insurance for full-time work for Wesman Foods, Inc., is excluded from this award and [husband] shall be entitled to ordinary salary increases (which are presumed not to exceed the annual cost of living increases) which he shall receive for full-time work. The Court's intent is that the parties share equally any disbursements from the company and to prevent bleeding off the corporate assets."

Foods.[2] He argues that the court erred, because it did not disentangle the parties' finances as much as possible. Courts should disentangle the finances in a dissolution proceeding to the greatest extent possible.

> "In dividing the property the dissolution decree should seek to disentangle the parties' financial affairs and make them free from each other's financial interference. The friction resulting from the unsuccessful marriage partnership almost inevitably makes continued business association untenable." *Slauson and Slauson*, 29 Or App 177, 183, 562 P2d 604 (1977), *quoted in Haguewood and Haguewood*, 292 Or 197, 208, 638 P2d 1135 (1981). (Citation omitted.)

■ It is apparent that the parties have had difficulty in resolving their differences and that it would be in both parties' best interests to end their financial relationship to the greatest extent possible. We conclude that the interest in Wesman Foods should be awarded to one of the parties. As explained in *Haguewood and Haguewood, supra*, 292 Or at 208:

> "Where division of the principal asset of the marriage would unnecessarily dissipate its value and where alternative means can be found for dividing the financial benefit of the asset, the asset should be awarded intact to the spouse best able to manage it and other forms of balancing awards of property or support should be employed."

Husband is best able to manage the business and, accordingly, it should be awarded to him.

The difficult issue here is how to value Wesman Foods. Husband and other witnesses testified that, unless it were sold or received an infusion of capital, it would probably be worthless within 6 months. On the other hand, there is evidence that the business does have significant value. There was a *bona fide* offer to purchase it for $500,000 at the time of trial. The testimony indicated that the offer could be structured in different ways for tax advantages and that it was sufficient to pay back all loans that the shareholders had made to it. The trial court recognized the difficulty in valuing the business because of its uncertain future and concluded

---

[2] Husband also contends that the court exceeded its authority by requiring him to make an annual accounting to wife. Because we hold that wife has no interest in future funds received from the business, that provision should be deleted.

that the best way to allow wife credit for the business was to give her one-half of all amounts exceeding salary and normal raises that husband receives from the corporation before or after a sale. The trial court explained:

> "Then we get to the famous Wesman Foods situation. The reason I said it doesn't matter very much about the sale or not, it certainly matters to the people who are interested in Wesman Foods, but this is of such a completely speculative nature and it is worth anywhere from $133,000 [the value of the assets] down to virtually very little. It is the kind of situation that one can really not have anything resembling a reasonable judgment as to what it's worth. There is a great deal of turmoil and difficulty. A possible sale, but even with a possible sale we don't know really what it's worth because it's — Mr. Madden is and others are owed a lot from it. There is just all kinds of questions about the process patents or whatever. And it's essentially an impossible matter to get a handle on, number 1."

We conclude that awarding husband his interest in Wesman Foods and awarding wife a money judgment against him for one-half the amount that the corporation owes him is the best way to divide the asset. Recognizing that husband does not have liquid assets readily available and that he needs flexibility in his business decisions, we award wife a money judgment in the amount of $80,250 payable at 9 percent interest, with $10,000 to be paid by January 1, 1993, $20,000 to be paid on or before August 30, 1995, and the remainder to be paid in full on or before August 30, 1997.

■ Husband next argues that the award of $1,750 per month permanent spousal support is too high. He contends that the court overestimated his income, ignored the goal of achieving economic self-sufficiency for each party and simply equalized their incomes. Husband receives $4,000 per month, plus benefits, from Wesman Foods. He also receives income from Madden Sales, but the amount is disputed by the parties. He argues that he only receives a few benefits from Madden Sales. However, wife contends that he receives at least $3,000 per month in salary and benefits from it. Historically, Madden Sales has provided husband an income in excess of $1,000 a month, invested approximately $500 a month in a pension plan for him and provided him with two vehicles and medical insurance. We conclude that husband's

salary is supplemented by income and benefits from Madden Sales by approximately $1,500 per month. We hold that an initial award of spousal support of $1,750 per month is appropriate.

■■ Husband also argues that, because wife is capable of achieving some degree of self sufficiency, spousal support should be reduced in the future. ORS 107.105(1)(d) provides that the court may provide for the support of a party "for such period of time as it may be just and equitable for the other party to contribute," after it considers various factors, including the length of the marriage, the age and health of the parties, earning capacities and the need for education or retraining. In the case of a homemaker spouse who has had an extended absence from the job market,

"where it is likely that the party will never recover from the loss of economic position due to the extended absence, * * * the court may award the disadvantaged party support as compensation therefore, *so that the standard of living for the disadvantaged party will not be overly disproportionate to that enjoyed during the marriage,* to the extent that that is practicable." ORS 107.105(d)(1)(F). (Emphasis supplied.)

Husband has achieved a substantially advantageous economic position relative to wife, who lost her economic potential during her extended absence from the job market. At age 50, with little experience and only two years of higher education, it is unlikely that her earning capacity will ever be equivalent to husband's. Permanent spousal support is warranted.

Spousal support, however, is not designed to allow one spouse to remain dependent on the other unnecessarily. Wife appears to have some ability to contribute to her own self-sufficiency. She can improve her job skills and earning capacity. *See Tannler and Tannler*, 68 Or App 432, 438, 683 P2d 110 (1984). She has applied for a few receptionist jobs but has not pursued any vocational training or counseling programs that might enhance her earning capacity. This case is similar to *Latimer and Latimer*, 103 Or App 43, 795 P2d 1102 (1990), where we concluded that, "[a]lthough, at this stage of her life, [the wife, age 47,] may be reluctant to embark on a new career, she nevertheless has an obligation to contribute to her own support." The wife there had more training than

wife here has but had poor health. We held that it was inappropriate to award permanent spousal support that covers nearly all monthly expenses and ignores the recipient's present and future earning capacity. On *de novo* review, we hold that wife should receive $1,750 per month for six years commencing July 1, 1990, and $1,300 per month permanently thereafter.

██ Husband further contends that the court erred in not awarding him the dependency tax exemption. He argues that he should have the exemption, because he pays $600 per month child support and because wife was awarded the family home with the accompanying interest deduction. Although the court *may* decide which parent is entitled to claim a child as an income tax exemption, it is not required to do so.[3] *Morris and Morris*, 104 Or App 384, 387, 801 P2d 875 (1990); *Richmond and Richmond*, 103 Or App 55, 59, 795 P2d 1104 (1990). The trial court refused to grant husband the dependency exemption, and he has not persuaded us it should be awarded to him. *See Frishkoff and Frishkoff*, 45 Or App 1033, 1042, 610 P2d 831 (1980).

█ Husband's final assignment of error is that the court abused its discretion in awarding wife attorney fees of $5,380. He contends that the parties have similar incomes, equal estates and access to resources with which to pay the cost of litigation. We disagree. Husband controls the largest asset that the parties own, Wesman Foods, and zealously avoided providing essential information about that asset to wife in a timely manner. Under both the trial court's judgment and ours, wife's access to her share of that asset has been delayed to give husband more flexibility in making business decisions related to that asset. The trial court did not abuse its discretion by requiring husband to pay wife's attorney fees.

Judgment modified to strike annual accounting requirement and to award husband all interests in Wesman Foods and to award wife a judgment of $80,250 payable at 9 percent interest from date of appellate judgment, $10,000 to be paid by January 1, 1993, $20,000 to be paid on or before

---

[3] Under the Child Support Guidelines,

"the formula presumes the custodial parent will have the tax exemption allowed for the child or children." OAR 137-50-330(2)(a)(I).

August 30, 1995, and the remainder to be paid in full on or before August 30, 1997, and to award wife spousal support of $1,750 per month for six years and $1,300 per month permanently thereafter; otherwise affirmed. No costs to either party.