Argued and submitted May 17, 1996, judgment modified in part; otherwise affirmed February 19, petition for review denied September 23, 1997 (326 Or 57)

## In the Matter of the Marriage of

### Phyllis Anita DAVIS,
*Appellant,*

*and*

### Timothy Luke DAVIS,
*Respondent.*

### (C932837DR; CA A85380)

934 P2d 451

Kelly M. Doyle argued the cause and filed the brief for appellant.

Herb Weisser argued the cause for respondent. With him on the brief was Soriano & Associates.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

**ARMSTRONG, J.**

Mother appeals a dissolution judgment. She assigns error to the court's custody award, its division of the parties' real property and its award of spousal support. We modify the property award but otherwise affirm the judgment.

■　　Father and mother were married in 1987. Their child was born the same year. The court awarded custody of the child to father after hearing six days of testimony, including the testimony of two child custody experts who recommended that father be awarded custody. We have reviewed the record *de novo* and have carefully considered mother's arguments against the custody award. Based on our review, we agree with the trial court that the custody award is in the child's best interest and therefore affirm it.

■　　Mother also assigns error to the trial court's disposition of the family home. In 1990, mother received a $63,000 settlement for injuries she sustained in an automobile accident that occurred before the marriage. She used $15,000 of those funds for a down payment on the family home. Father paid the monthly mortgage on the home until the parties separated. The tax-assessed value of the home is between $53,000 and $56,000,[1] and a real estate agent who had done a comparative market analysis of the home testified that it would sell in 30 to 90 days for between $82,000 and $85,500.

At trial, both parties agreed that their interest in the home should be divided equally. Mother proposed that the home be sold and, while it was on the market, that father live in it to complete home-repair projects that he had begun but not completed. Father would pay the mortgage on the home during that period. Father agreed to those conditions but wanted an opportunity to purchase mother's equity in the home if its price dropped to $60,000 or less. Thus, while both parties agreed to divide the property, they did not agree on the manner in which to do that.

The court did not follow either party's proposal. It divided the equity in the home equally but put off selling the

---

[1] The record is unclear as to which figure, $53,000 or $56,000, reflected the most recent assessment.

home until the child reaches the age of 21. It is evident that the court considered the delay in selling the home to be necessary to the child's well being. It stated:

"I am doing something very chancy with [the child] by changing custodial parents, so I don't want anything to change. That's one of the reasons why [his counselor] is going to stay in his life, and so because of that I'm awarding the house to father.

"I'm going to require that father * * * live in the house with [the child], and that requirement will continue. When [the child] turns 21, the house will then be sold and the proceeds will be split 50-50 between mother and father. The father will be responsible for making sure that the house is on the market as of 30 days after [the child]'s 21st birthday, and father will be responsible for making sure that it's being marketed by a responsible real estate agent."

The judgment provides that the home can be sold before the child turns 21 with court approval. ORS 107.105(1)(f) states that the division of real property must be "just and proper in all the circumstances." We conclude that, considering all the circumstances, the court erred in putting off the sale of the home until the child's 21st birthday.

Father argues that the objective of maintaining the family home for the minor child, which is even more important in this case because the child has special needs, justified the distribution. While "[t]he court must consider the needs of the children in deciding what is just and proper," *Haines and Haines*, 102 Or App 221, 223, 793 P2d 347 (1990), there is no evidence in the record that the child needs to live in this home.[2] There was substantial evidence that the child's environment needs to be structured and consistent, but it is how he is treated, not the home in which he lives, that is critical.

Economic realities must also be considered in deciding what is just and proper. *Barlow and Barlow*, 111 Or App 179, 181-82, 826 P2d 18, *rev den* 313 Or 299 (1992). In light of mother's difficult economic circumstances, we conclude that the property should be sold now. Mother was unemployed at

---

[2] There was evidence that the child should remain in the Forest Grove school system, but there was no evidence that father and the child would be unable to find affordable housing in the area if the home were sold.

the time of dissolution. Due to her automobile accident, her mobility is limited and she is unable to return to the type of jobs she had held before her marriage. She is in a program to train her for future employment but has been advised not to become employed outside the program. Of the $25,000 that she had set aside from her settlement funds, only $300 remains. The only asset of value that the parties own is their home, and it has appreciated substantially. Considering all of the surrounding circumstances, therefore, it was error for the court to delay the sale of the home.

Contrary to the position that she took below, mother now asks us to award the home to her free of any claim by husband. We reject that request. On remand, the court should modify the judgment to direct that the home be placed on the market no later than three months after the date of the appellate judgment, with the proceeds of the sale divided equally by the parties.

■      Mother also assigns error to the court's spousal- support award. The court granted an indefinite award of $200 per month spousal support to mother and ordered mother to pay $200 per month in child support until the child's 18th birthday. Mother does not challenge the child-support award.

■      Although support need not be awarded so as to equalize the parties' incomes, *Graf and Graf*, 97 Or App 425, 428, 776 P2d 46 (1989), the court should set a support award that will allow each party to achieve a standard of living not "overly disproportionate to that enjoyed during the marriage, to the extent that is practicable." ORS 107.105(1)(d)(F); *LaFrance and LaFrance*, 134 Or App 76, 79, 894 P2d 1210 (1995). In this case, that goal is not practicable. At least until the parties' home is sold and the proceeds divided, the parties will not be able to enjoy the standard of living that they enjoyed while they were married.

Husband is in good health and has a steady job. He has been trained as a welder, and the evidence indicates he will rarely, if ever, have a problem finding work in his field. His gross income is approximately $2,200 per month, with a net income of approximately $1,450 per month. Although he is able to work overtime to earn more income, he is the child's

primary care giver now, so his ability to work overtime is limited.

Mother is unemployed. Before the marriage, she worked as a certified nurse assistant and a bartender. Because of her physical limitations, she cannot return to those occupations. She is currently in a retraining program, and her vocational-rehabilitation counselor testified that it could take between six months and three years for mother to finish the training and become employed. While mother could now work at a minimum-wage job, she has been advised not to obtain other employment during the training program. Practically, then, for mother to remain in the program, her living costs have to be paid by father or through public assistance.

Considering their respective situations, it is appropriate that father pay some spousal support. However, although one of the goals of support is to "avoid putting the burden of [mother's] support entirely on society," we must also consider the cost of raising the child. *See Curtis and Curtis,* 102 Or App 252, 255-56, 793 P2d 352, *rev den* 310 Or 393 (1990). Based on the child support guidelines, and assuming a minimum-wage income for mother, the monthly cost of raising the child is $648, plus $150 for medical insurance. ORS 25.270 to ORS 25.287. Mother must pay $200 of those costs and does not challenge that responsibility.[3] We find that the support amount set by the court is appropriate considering the custody award and the net disposable income available to each party.

Judgment modified to order that parties' real property be placed on market for sale within three months of date of appellate judgment; otherwise affirmed. Costs to wife.

---

[3] Based on the guidelines, mother is obliged to pay $271 per month in child support. ORS 25.270 to ORS 25.287. The court set mother's support amount at $200 per month, however, based on a finding that mother had rebutted the presumption that she could pay the amount specified by the guidelines.