Argued and submitted March 11, reversed and remanded in part; judgment
modified in part; otherwise affirmed July 3, 2002

In the Matter of the Marriage of

Rochell Ann ARAND,
*Appellant,*

*and*

Ronald Stuart ARAND,
*Respondent.*

15-99-09821; A109832

49 P3d 799

Ralph A. Bradley argued the cause and filed the brief for appellant.

No appearance for respondent.

Before Landau, Presiding Judge, and Brewer and Schuman,* Judges.

---

* Schuman, J., *vice* Linder, J.

SCHUMAN, J.

## SCHUMAN, J.

Wife appeals from a judgment that dissolved a 14-year marriage, awarded her custody of the parties' four children along with spousal and child support, and equally divided the equity in the parties' real property by awarding it to wife subject to an equalizing lien in favor of husband, enforcement of which was stayed for two years. Wife assigns error to three aspects of the trial court's dissolution judgment: its calculation of husband's gross income (and consequent calculation of child support), the length of time it stayed enforcement of husband's lien, and the amount and duration of spousal support. On *de novo* review, ORS 19.415(3), we modify the judgment.

The parties were married in 1985. They separated in May 1999, and the marriage was dissolved in March 2000. At the time of the dissolution, wife and husband were both 34 years old and their four children were 13, 11, 9, and 5. During the first year of their marriage, wife worked as a nanny while husband went to school. That arrangement ended with the birth of their first child, at which time the parties agreed that wife would be a stay-at-home mother. She did not work outside the home again until a few months before the dissolution, at which time she earned $7.54 per hour working between 25 and 28 hours a week as a school bus driver and substitute teacher. The trial court found that her earning capacity at the time of dissolution was minimum wage, $1,125 per month. Wife hopes to attend college so she can improve her earning capacity. Husband, who has one year of college, worked primarily at logging and in construction during the marriage. At the time of the dissolution, he was in good health and worked as a hook tender for Kelly Brothers logging. Husband testified that his gross earnings were $22,743.13 for 1998, $30,632.00 for 1997, and $24,594.00 for 1996. In addition to his regular monthly income, he received $10 a day for driving a "crummy."[1] During the 60 days preceding trial, husband drove the crummy virtually every work

---

[1] Possibly some readers of this opinion neither live in the Pacific Northwest nor read the novels of Ken Kesey. For their benefit, we explain that a "crummy" is a vehicle, usually old and not licensed to operate on highways, used to transport loggers on logging roads to their remote work sites. *See I-L Logging Co. v. Mfgrs.*

day except for a two-week period. The parties stipulated that husband's gross monthly income, not including what he earned from driving, was $2,584.57 and that his net income was $2,014.92. The trial court did not take the driving income into account in calculating spousal or child support.

The only significant marital asset is a 1,200 square foot home, purchased more than 10 years before the dissolution. It is located near the schools three of the children attend and three houses away from their grandmother. The house has been appraised at $108,000. Approximately $66,841 is still owed on it, leaving an equity of about $41,000. Wife testified that, because husband was late in making mortgage payments, she will not qualify for new loans if forced to sell her home.

On appeal, wife asks that we mandate inclusion of husband's crummy-driving income in the calculation of his gross income; that we stay enforcement of husband's lien against the home for five years instead of the two-year stay imposed by the trial court, thereby enabling her to avoid selling the family home; and that we increase the amount and duration of spousal support to $600 per month for seven years.

■■ We begin with the question of husband's crummy-driving income. In calculating child support, the trial court must use the formula established by OAR 137-050-0330. ORS 25.280 (formula establishes presumptively correct amount of child support); *Rossi and Rossi*, 128 Or App 536, 543, 876 P2d 820 (1994). That formula uses an obligor's "gross income," which includes "income from any source," including, but not limited to, salaries and wages. OAR 137-050-0340; *Watson and Watson*, 107 Or App 416, 419, 812 P2d 429 (1991). The crummy-driving income clearly comes under the rubric of wages. *Waterman and Waterman*, 158 Or App 267, 272, 974 P2d 256 (1999) (gross income includes all wages received on a regular basis, including regularly received overtime pay).

---

& *Whlse. Ind. Exc.*, 202 Or 277, 281, 273 P2d 212 (1954) (relating history of "crummies").

Husband testified that, in the 60 days preceding trial, he received payment of $10 a day for driving a crummy virtually every work day except for two weeks. We find on *de novo* review of the record that husband's gross income should be calculated to include an additional $200 per month ($10 per day for an average of approximately 20 days per month). That addition brings his gross monthly income to $2,784.57. Because the trial court used a different amount to calculate child support, we remand to the trial court for recalculation. *Krutsinger and Krutsinger*, 140 Or App 215, 219, 914 P2d 1096 (1996).

■ We turn next to husband's lien on the family home in the amount of approximately $20,000, roughly half of its equity. Husband suggested at trial that he wanted that money as soon as possible so that he could buy a house near the children. However, we conclude from the record that this objective should not be achieved by forcing wife to pay the equalizing judgment to husband in just two years. In order to become independent, wife needs to attend school for at least four years, and, during that period, she will make at best minimum wage. In addition, we find from the record that, because of wife's current financial condition and husband's failure to make timely mortgage payments, wife could not easily obtain a second mortgage. She would therefore have to sell the house and could not obtain housing in the area near the children's schools and their grandmother, a convenient source of inexpensive childcare.

■ This court must consider the needs of the children in deciding just and proper terms of dissolution. *Davis and Davis*, 146 Or App 507, 510, 934 P2d 451, *rev den* 326 Or 57 (1997). Economic realities figure in that determination as well. *Barlow and Barlow*, 111 Or App 179, 181-82, 826 P2d 18, *rev den* 313 Or 299 (1992). We find that there is evidence in the record that the children's best interest is served by keeping them in their present neighborhood and that, because of mother's somewhat difficult economic circumstances, mother and the children would be unable to find affordable housing elsewhere in the area if the house were sold. Considering those circumstances, it was error for the trial court to allow mother only two years to pay the equalizing judgment to husband. *Davis*, 146 Or App at 510-11. On

remand, the court should modify the judgment to allow wife five years to satisfy the equalizing judgment.

 Wife's next assignment of error contests the amount of spousal support awarded below, $100 per month for two years. Spousal support in Oregon is governed by statute and case law. ORS 107.105 (1997)[2] provides, in part:

"(1) Whenever the court grants a decree of marital annulment, dissolution or separation, it has power further to decree as follows:

"* * * * *

"(d) For the support of a party, such amount of money for such period of time as it may be just and equitable for the other party to contribute, such contribution to be in gross, in installments or both, as the court may order. * * * In making such support order, the court shall consider the following:

"(A) The length of the marriage;

"(B) The age and the physical and mental health of the parties;

"(C) The contribution by one spouse to the education, training and earning power of the other spouse;

"(D) The earning capacity of each party, including educational background, training, employment skills and work experience;

"(E) The need for education, training or retraining to enable a party to become employable at suitable work or to enable the party to pursue career objectives to become self-supporting at a standard of living not overly disproportionate to that enjoyed during the marriage to the extent that is possible;

"(F) The extent to which the present and future earning capacity of a party is impaired due to the party's extended absence from the job market to perform the role of homemaker, the extent to which suitable job opportunities are unavailable to a party considering the age of the party and the length of time reasonably anticipated for a party to

---

[2] The petition for dissolution of marriage was filed May 28, 1999. The 1999 amendments apply only to those petitions filed after October 23, 1999. Or Laws 1999, ch 587, § 3.

obtain training or updating of career or job skills. In a case of a party's extended absence from the job market to perform the role of homemaker, where it is likely that the party will never substantially recover from the loss of economic position due to the extended absence, and where the other party has, during the marriage, achieved a substantially advantageous economic position through the joint efforts of the parties, the court may award the disadvantaged party support as compensation therefor, so that the standard of living for the disadvantaged party will not be overly disproportionate to that enjoyed during the marriage, to the extent that that is practicable;

"(G) The number, ages, health and conditions of dependents of the parties or either of them and provisions of the decree relating to custody of the children, including the length of time child support obligations will be in effect;

"(H) The tax liabilities or benefits to each party and the net spendable income available to each party after accounting for such liabilities and benefits * * *;

"(I) The amount of long-term financial obligation, including legal fees and costs;

"(J) Costs of health care to a party;

"(K) The standard of living established during the marriage;

"(L) Premiums paid or to be paid for life insurance under ORS 107.810 to 107.830 on the life of a party ordered to pay support; and

"(M) Such other matters as the court shall deem relevant in the particular case in order that each party shall have the opportunity to achieve an economic standard of living not overly disproportionate to that enjoyed during the marriage, to the extent that is possible."

No one factor is dispositive. The statute's mandate to consider "earning capacity" authorizes a consideration of potential income as well as actual past income. *Waterman*, 158 Or App at 271.

■　　　Wife requests that the spousal support be based on husband's monthly income being $2,800, wife earning less than minimum wage and planning to obtain a college degree

to make her self sufficient, the 14-year length of the marriage, and the fact that wife has custody of the four children. We have already determined that husband's monthly gross income should be $2,784.57 for purposes of both spousal and child support.

■ We agree with wife that the trial court erred in setting spousal support of only $100 per month for two years. In addition to the length of the marriage and the number of dependent children, several factors militate in favor of granting wife's request that it be increased in both amount and duration. Wife contributed to husband's education during the first year of their marriage. ORS 107.105(1)(d)(C) (1997). Husband's earning capacity is much greater than wife's. ORS 107.105(1)(d)(D) (1997). Because wife is not employable at an income commensurate with a standard of living not overly disproportionate to the one that she enjoyed during her marriage, it is now she who needs education to enhance her earning capacity. She is seeking a bachelor's degree in early childhood education to remedy this. ORS 107.105(1)(d)(E) (1997). Wife's diminished earning capacity also is in part a result of her having been absent from the job market some 12 years to serve as a homemaker. ORS 107.105(1)(d)(F) (1997). In determining the amount and duration of spousal support, a significant factor is usually whether the dependant spouse's property and potential income, including what that person can earn or become capable of earning, will provide a standard of living that is "not overly disproportionate" to that enjoyed during the marriage. ORS 107.105(1)(d)(E) (1997); see *Auld and Auld*, 72 Or App 747, 751, 697 P2d 220 (1985).

In examining the totality of the circumstances in this case, we are mindful of the goal of eventually ending the support/dependency relationship within a reasonable amount of time, without, however, truncating it in such a manner that would result in undue hardship. *Taylor and Taylor*, 136 Or App 416, 420, 902 P2d 120 (1995). Having performed such an examination in light of guiding statutes and case law, we conclude that the most equitable solution is to award wife $350 per month in spousal support for a period of five years from the date of judgment.

Award of spousal support reversed and remanded for entry of amended judgment awarding $350 per month for five years from date of original judgment; award of child support reversed and remanded for reconsideration; judgment modified to allow wife five years to pay equalizing judgment to husband on equity in parties' house; otherwise affirmed.