Argued and submitted September 11, 2008, dissolution judgment modified to increase indefinite maintenance spousal support to wife to $750 per month; otherwise affirmed March 4, 2009

In the Matter of the Marriage of

Samuel Wayne BOYD,
*Petitioner-Respondent,*

*and*

Lori Kay BOYD,
*Respondent-Appellant.*

Linn County Circuit Court
042097; A135183

203 P3d 312

John L. Barlow argued the cause for appellant. With him on the briefs was Barnhisel Willis Barlow & Stephens, PC.

Edward L. Daniels argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

EDMONDS, P. J.

**EDMONDS, P. J.**

Wife appeals from a judgment dissolving the parties' marriage. ORS 107.105. She assigns error to the trial court's property distribution, award of spousal support, and award of attorney fees. We modify the judgment and otherwise affirm.

Husband and wife were married in 1974, when husband was 18 years old and wife was 16 years old. The parties separated in 2004 after 30 years of marriage. At the time of trial, husband was 51 years of age, and wife was 49 years of age.

After they were married, wife dropped out of high school and stayed home to raise the parties' two children. Wife received her high school diploma in 1984 after completing classes at Lane Community College. Early in the marriage, wife occasionally worked outside the family home, never earning more than minimum wage. Since then, her only employment experience has been caring for her father while he recovered from cancer surgery and chemotherapy treatments.

Husband initially attended community college and then began working at the Wah Chang plant in Albany in 1976, where he worked at the time of trial. In 1997, husband was elected president of the local steelworkers union, although he was voted out of office in May 2006. Husband's seniority and qualifications enable him to bid on higher paying jobs if he chooses to do so, but those higher paying jobs would require him to work night shifts or substantial overtime. Husband's current gross monthly income is approximately $4,000.

Beginning in 1994, wife's mother and stepfather each gave $10,000 per year to husband and $10,000 per year to wife for a total of $40,000 to the couple per year. Wife's stepfather died in 2000, and the gifts from him ended. Wife's mother continued to give husband and wife each $10,000 per year until 2004, when the parties separated. Also, in 2000, wife's stepfather deeded to her a 50 percent interest in some unimproved lots in Monroe, Oregon. That property is known

as the "brickyard property" because a brickyard once operated on the site, and it becomes a focal point of our discussion later in this opinion.

By the time of trial, the parties' assets consisted of the marital residence, husband's pension and retirement accounts, wife's 50 percent interest in the brickyard property, four vehicles, various bank accounts, and personal property. The issues at trial included, among other things, whether the brickyard property should be included in the marital estate, the division of the marital estate, whether wife was entitled to an award of spousal support, and whether husband was entitled to an award of attorney fees.

The trial court awarded wife indefinite spousal support of $200 per month, awarded husband $13,274.70 in attorney fees and costs, included the brickyard property in the marital estate, and divided up the marital estate as follows:

| | Husband | Wife |
|---|---|---|
| Marital Residence | —— | $301,230.00 |
| Brickyard Property | —— | $266,000.00 |
| Retirement Accounts | $543,691.00 | —— |
| Vehicles | $10,585.00 | $10,535.00 |
| Bank Accounts | $5,350.00 | $13,005.00 |
| Personal Property | $3,488.00 | $3,084.00 |
| Unsecured Debt | ($17,364.00) | $10,759.00 |
| **TOTAL** | $573,502.00[1] | $604,613.00 |

In the trial court's letter opinion, the court explained its decision to include the brickyard property in wife's column of the marital estate, even though it found that "there was no intent to give [the brickyard] property to Husband, or any interest in it, and that it was not commingled with the marital property":

"As noted above, even though the Brickyard property is not the result of equal contribution, the court must look at

---

[1] The first Joint Property Distribution List improperly calculated husband's portion of the marital estate as $573,502.00 instead of $545,750.00

all the evidence and all the equities to determine whether or not to include it in the marital estate. In view of all these considerations the court finds it most equitable to all concerned to include this property in Wife's column to compute the property division. *In light of this however two other decisions would be more equitable, one is to [require] payment of attorney fees to [H]usband and the other is to slightly reduce the spousal support award to reflect the amount that Wife would have to pay in an equalization judgment.* The Joint Property Distribution List enclosed shows an equalization judgment in favor of Husband in the sum of $15,556 to balance the columns. This will not be awarded as a judgment however, but will be addressed in the spousal support award determination and the award of attorney fees. The attorney fee award shall not exceed $15,500."

(Emphasis added.)

After the trial court issued its first letter opinion and property distribution list, both parties informed the court of some errors in the marital distribution calculation. Specifically, the parties informed the trial court that the brickyard property was overvalued by $60,000 to $133,000, that husband's retirement assets were overvalued by approximately $200,000, and that wife's debt and a portion of husband's debt were improperly added as assets rather than subtracted as liabilities. The trial court then modified its valuation of the marital estate:

"To follow up our telephone conference of today it is agreed and the court would order that in the property spreadsheet, at line 34, the pension should be valued at $338,946.00. Further, it is ordered that line 13 should read $133,000.00; line 191 should read [(]$10,759.00[)], and that line 197 should be a total of the column.

"[Husband's attorney's] quick calculation was that these adjustments would increase the equalization judgment to about $40,000. *The court's intent here was to equalize things without a substantial cash transfer.* [Husband's attorney] asked for an elimination of spousal support rather than a large equalization judgment[;] however the court is not inclined to do so.

"In light of the ages of the parties, their work history, their current circumstances, and the other equities in the case, including the relative non-fluidity of the major assets,

it is fair and equitable that wife not pay any equalization judgment. This does result in a slightly unequal division of property, which in light of the spousal support award is deemed just and proper."

(Emphasis added.) Accordingly, the trial court modified the marital estate as follows:

| | Husband | Wife |
|---|---|---|
| Marital Residence | —— | $301,230.00 |
| Brickyard Property | —— | **$133,000.00** |
| Retirement Accounts | **$338,946.00** | |
| Vehicles | $10,585.00 | $10,535.00 |
| Bank Accounts | $5,350.00 | $13,005.00 |
| Personal Property | $3,488.00 | $3,084.00 |
| Unsecured Debt | **($6,605.00)** | **($10,759.00)** |
| **TOTAL** | **$351,764.00** | **$450,095.00**[2] |

We understand the trial court to have set wife's spousal support at $200 per month in light of wife receiving the long half of the property distribution, as explained by the above chart.

■ Wife appeals, assigning error to the trial court's property division, award of spousal support, and award of attorney fees. As to the property division, wife argues that "[t]he trial court erred in including the Brickyard property in its calculation of equitable division of the marital assets of the marriage." We understand wife to argue that the trial court included the brickyard property in the marital estate in an attempt to equalize the property division without awarding an equalizing judgment:

"[T]he trial court, in an effort to balance the property awarded to each party, first assigned an inflated value to Wife's interest in the Brickyard property and placed it in her column. This nearly equalized the values of the assets

[2] Due to a calculation error, the second Joint Property Distribution List improperly calculated wife's portin of the marital estate as $450,185.00. Specifically, in calculating wife's real property subtotal, the court added the equity in the marital residence and the equity in the brickyard property to reach $434,320 instead of $434,230.

awarded to each party, but only because the trial court had miscalculated the value of Husband's pension. The trial court completed balancing the division of assets by stating that it would award attorney fees to Husband in an amount not to exceed $15,500."

Husband responds that "[t]he [brickyard] property was acquired during the marriage and as such it is marital property." In the alternative, husband argues that "if the presumption [of equal contribution] was overcome it is just and equitable to consider the property in the overall distribution of assets." Specifically, husband asserts that

> "[t]he distribution gave Wife assets with a value of $450,184. Husband was given assets with a value of $351,764. That distribution would require a property equalization judgment of $49,210.50 in favor of Husband. Rather than requiring Wife to pay a property equalization judgment that would decrease her cash flow, the Court considered the unequal distribution in settling spousal support and attorney fees."

We review the property division *de novo*. ORS 19.415(3). Our property division analysis is governed by ORS 107.105, which provides, in part:

> "(1) Whenever the court renders a judgment of marital * * * dissolution * * *, the court may provide in the judgment:
>
> "* * * * *
>
> "(f) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. A retirement plan or pension or an interest therein shall be considered as property. The court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held."

The Supreme Court set forth the framework for analyzing the division of marital property under ORS 107.105(1)(f) in *Kunze and Kunze*, 337 Or 122, 92 P3d 100 (2004). First, we must identify when the parties acquired the property at

issue. *Id.* at 134. If the parties establish that the property at issue is a marital asset (it was acquired during the marriage), "then the court must apply the rebuttable presumption of equal contribution under ORS 107.105(1)(f) as its next step in the analysis." *Id.* To rebut the presumption of equal contribution, a party must prove by a preponderance of the evidence that his or her acquisition of the asset did not result from an equal contribution from the other spouse. *Fuernsteiner-Perin and Perin*, 211 Or App 23, 29, 153 P3d 151, *rev den*, 343 Or 33 (2007).

■ Once we apply the statutory presumption, we then review the equity of the property division to determine whether the property division is "just and proper in all the circumstances." *Kunze*, 337 Or at 135-36. That review "takes into account the social and financial objectives of the dissolution, as well as any other considerations that bear upon the question of what division of the marital property is equitable." *Id.* at 135. Those "other considerations" include (1) asset preservation; (2) achieving the parties' economic self-sufficiency; (3) the particular needs of the parties and their children; and (4) the extent to which a party has commingled the asset. *Id.* at 136.

■ Preliminarily, we believe that the trial court's property division and award of $200 indefinite spousal support per month is problematic because it appears to leave wife with inadequate resources to enjoy a standard of living not overly disproportionate to that which she enjoyed during the marriage. We agree with the trial court that wife has rebutted the presumption of equal contribution under ORS 107.105(1)(f) with respect to the brickyard property. According to the evidence, wife was the sole intended donee of her stepfather's gift. The next question is whether, even though the brickyard property is not a marital asset, it would be "just and proper" to include it in the marital estate. We first consider the "social and financial objectives of the dissolution." *Kunze*, 337 Or at 135. We note that in a long-term marriage, such as this one, "the parties should separate on as equal a basis as possible." *Stice and Stice*, 308 Or 316, 327, 779 P2d 1020 (1989). To accomplish that goal, we work to "disentangle the finances in a dissolution proceeding to the greatest extent possible." *Madden and Madden*, 114 Or App 319, 323,

836 P2d 1349 (1992). Indeed, where the bulk of the estate is composed of a few principle assets, we strive to keep the assets whole if dividing them "would unnecessarily dissipate [their] value." *Haguewood and Haguewood*, 292 Or 197, 208, 638 P2d 1135 (1981).

The trial court's letter modifying the first property valuation indicates that the trial court initially included the brickyard property to balance the property division and allow the parties to separate on as equal a basis as possible: "The court's intent here was to equalize things without a substantial cash transfer." Indeed, under the figures from the first Joint Property Distribution List, had the trial court not included the brickyard property, husband's share of the marital assets would have totaled $573,502 while wife's share would have totaled $338,613, a difference of $234,889 in favor of husband. Yet once the trial court used the corrected figures and included the brickyard property in the marital estate, an imbalance in the property division was created: Husband received $351,764 while wife received $450,095, a difference of $98,331 in favor of wife. But if the brickyard property is not included in the modified calculation, husband would receive $351,764 and wife would receive $317,095, a difference of $34,669 in favor of husband. Thus, excluding the brickyard property from the marital estate produces a more equitable division of assets. And none of the "other considerations" justifies including the brickyard property in wife's share of the marital estate.[3] Accordingly, we modify the trial court's property distribution to exclude wife's interest in the brickyard property from the marital estate.

Having determined that the brickyard property is not part of the marital estate, we note that wife no longer receives the long half of the marital property distribution. Indeed, husband's portion of the marital estate is now greater than wife's portion. In light of those circumstances, we turn to the trial court's award to wife of $200 indefinite spousal support per month.

---

[3] We agree with the trial court that "the evidence presented to the court in total supports the finding that there was no intent to give this property to Husband, or any interest in it, and that it was not commingled with the marital property."

■ ■ In her assignment of error relating to spousal support, wife contends that the facts support an indefinite spousal support award of more than $200 per month. We agree. ORS 107.105(1)(d)(C) identifies a nonexhaustive list of factors that a court should consider in making an indefinite spousal maintenance determination:

"(i) The duration of the marriage;

"(ii) The age of the parties;

"(iii) The health of the parties, including their physical, mental and emotional condition;

"(iv) The standard of living established during the marriage;

"(v) The relative income and earning capacity of the parties, recognizing that the wage earner's continuing income may be a basis for support distinct from the income that the supported spouse may receive from the distribution of marital property;

"(vi) A party's training and employment skills;

"(vii) A party's work experience;

"(viii) The financial needs and resources of each party;

"(ix) The tax consequences to each party;

"(x) A party's custodial and child support responsibilities; and

"(xi) Any other factors the court deems just and equitable."

No single factor is dispositive. *Arand and Arand*, 182 Or App 368, 374, 49 P3d 799 (2002). But the primary goal of spousal support in a long-term marriage such as this is to provide a standard of living roughly comparable to the one enjoyed during the marriage. *Mallorie and Mallorie*, 200 Or App 204, 219-20, 113 P3d 924 (2005), *rev den*, 340 Or 18 (2006).

The parties were married over 30 years and they are both in their early 50s. Husband claims living expenses in his uniform support affidavit of $2,315 per month. Wife claims living expenses in her uniform support affidavit of $2,232 per month. The trial court found wife's living expenses to be $2,107 per month. Husband's gross income is approximately

$4,000 per month, the result of a successful career. Wife, on the other hand, has not entered the workforce because she stayed home to raise the parties' two children. She has no other income from the assets that she has been awarded from the marital estate, and the brickyard property produces no income. With only a high school diploma and little work experience, wife is faced with the prospect of working at minimum wage for the rest of her working life. At minimum wage, wife can earn $1,344 in gross income per month. The evidence also supports the conclusion that wife's earning capacity has been impaired by her absence from the job market and that there will be a permanent disparity between husband's and wife's earning capacities. In light of the length of the parties' marriage, wife's age, wife's limited education, the disparity in the parties' income, and the impairment of wife's earning capacity because of her absence from the job market, we conclude that indefinite spousal support in the amount of $750 per month is proper so that wife can have a standard of living that is not overly disproportionate to that enjoyed during the marriage.[4]

Finally, we turn to the issue of whether the trial court abused its discretion in awarding husband $13,274.70 in attorney fees and costs. ORS 20.075. Wife argues that the trial court erred for two reasons. First, she contends the trial court failed to "explain the relevant facts and legal criteria used in awarding attorney fees." Second, she contends that the trial court "erroneously attributed fault to [w]ife for delay in the proceedings." Husband responds that the trial court properly awarded attorney fees in light of "the disparity in the property distribution" and given that "[w]ife tried to make the dissolution costly and to prolong the dissolution proceeding."

---

[4] As we explained in *Potts and Potts*, 217 Or App 581, 589 n 4, 176 P3d 1282 (2008),

"[w]e readily acknowledge that the exercise in which we have engaged is fraught with assumptions that may not prove out. That uncertainty is partly owing to the nature of the record before us but, more fundamentally, it is the inevitable product of a concatenation of both independent and unrelated estimates that dance at the edges of speculation. In short, even where arithmetic calculations are concerned, the assessment of a spousal support award is often far from an exact science."

■ We initially conclude that the trial court adequately explained its decision to award attorney fees. While courts need not make lengthy or complex findings under ORS 20.075, courts still "must describe the relevant facts and legal criteria for the court's decision to award or deny attorney fees in any terms that are sufficiently clear to permit meaningful appellate review." *McCarthy v. Oregon Freeze Dry, Inc.*, 327 Or 185, 190-91, 957 P2d 1200 (1998) (on reconsideration). Here, the trial court explained its decision to award attorney fees in terms sufficiently clear as to allow appellate review:

> "Wife made numerous telephone calls and left messages on husband's telephone during the post separation period. Some of these messages are set forth in Exhibit 25. These messages demonstrate that wife is very angry with husband. *They also demonstrate her intent to prolong the pain of litigation in this case. The court is also considering in the award of attorney fees the fact that Wife receives significant assets in this case and will not be required to pay an equalization judgment.*"

(Emphasis added.)

■ We also conclude that the trial court did not abuse its discretion in awarding husband $13,274.70 in attorney fees and costs. ORS 20.075 provides that a court must consider the following factors, among others, when deciding whether to award attorney fees:

> "(a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.
>
> "* * * * *
>
> "(e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.
>
> "(f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.
>
> "* * * * *
>
> "(h) Such other factors as the court may consider appropriate under the circumstances of the case."

Here, over approximately 16 months, wife left over 700 messages on husband's telephone answering machine. Exhibit 25 includes excerpts of transcripts of messages left by wife on husband's answering machine:

"[23 September 2004:] [I] wonder[ ] if your lawyer gave you a printout on Oregon Divorce—[you] might want to read [the] last page. Do you really think you'll have enough money to fight me in Court? Says it'll cost 15 to 20 thousand if you appeal it, * * * and you know I will.

"* * * * *

"[15 November 2004:] You're just about to find out how much this is going to cost. * * * [T]his is just the beginning, just starting.

"* * * * *

"[25 November 2004:] Got more information about divorces, called open communications, by coming to agreements about property you can avoid long drawn out battles that can add months even years to [the] divorce process. Can you afford i[t] for years? You're already going broke.

"[27 November 2004:] Sure glad you're happy now because I'll guarantee when this is over you're not going to be. I'll make you as miserable as I am."

Under the circumstances, we conclude that the trial court did not abuse its discretion when it held that the transcribed messages in Exhibit 25 "demonstrate [wife's] intent to prolong the pain of litigation in this case." In sum, the trial court had discretion to award attorney fees to husband under ORS 20.075 based on wife's conduct.

Dissolution judgment modified to increase indefinite maintenance spousal support to wife to $750 per month; otherwise affirmed.